FILED
2005 Mar-02 PM 05:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**VICKI V. BUSBY,**

**Plaintiff,**

**v.**

**JRHBW REALTY, INC. d/b/a REALTYSOUTH, et al.,**

**Defendants.**

**CASE NO.: 04-B-2799-S**

# Memorandum of Opinion

## I. Introduction and Allegations of the Complaint

This is a civil action filed on September 23, 2004, by the Plaintiff, Vicki V. Busby, "on behalf of herself and all others similarly situated," against the Defendant, JRHBW Realty, Inc. d/b/a RealtySouth. The Complaint alleges that the Plaintiff purchased real estate in Jefferson County, and that in connection with that purchase she entered into a "federally related loan" as that term is defined under the Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Deed and title were formally transferred to the Plaintiff on May 26, 2004.[1] At the closing, RealtySouth added a settlement charge called an "ABC FEE", in the amount of $149.00, to the Plaintiff's HUD-1 Settlement Statement.[2] The ABC FEE was a separate charge from the "Total Sales/Brokers Commission" of $9,350.

The Plaintiff alleges that: "At all times relevant to this Complaint, Defendant has unlawfully

[1]This sentence and the remainder of the facts alleged in the Complaint are set out as, and considered to be, true, as the Court is required to do when ruling on a Motion to Dismiss.

[2]"ABC" stands for Administrative Brokerage Commission. *Defendant's Motion to Dismiss*, at 1.

and on a systematic basis charged and accepted purported settlement related charges, in the form of 'ABC FEE[S],' from consumers . . . without rendering any service in exchange for said fee." *Complaint*, at 7. The Complaint further alleges that "RealtySouth's charging and acceptance of the ABC Fee violates RESPA because (1) it is a fee for which no service is rendered and/or (2) it is a duplicative fee for services already rendered as part of the "total sales/broker's commission." *Id.* Count One of the Complaint charges this as a violation of RESPA at 12 U.S.C. § 2607; 24 C.F.R. § 3500.14.

Attached to the Complaint are two exhibits. The first is the HUD-1 statement at issue in this case. Line 704 of that statement reflects the entry "ABC Fee to Realty South" and the charge of $149.00. *Id.* (Exhibit 1), at 2. Exhibit 2 is an affidavit from Tyler Dodge, the Senior Vice President and Chief Operating Officer of the Defendant. *Complaint* (Exhibit 2), at 1. The affidavit states that the charge is actually an increase in the Commission paid to RealtySouth. *Id.* at 2. It also states

> The administrative brokerage commission was not intended to cover any specific service. On the contrary, it simply was an increase in the price or fee that RealtySouth charged for all its brokerage services rendered to both buyers and sellers.

*Id.* Attached to Exhibit 2 (as Exhibit A) is a series of questions and answers concerning the ABC Fee "that was prepared and distributed in connection with the charge of the administrative brokerage commission." *Id.*

This case has come before the Court on Defendant JRHBW Realty, Inc.'s Motion to Dismiss (doc. 6). For the reasons stated herein, the Motion will be **GRANTED in part** and **DENIED in part**.

## II. Standard of Review

The Defendant moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), for failure

to state a claim upon which relief may be granted. In reviewing such a motion, this Court must

> accept the allegations in the complaint as true and construe them "in the light most favorable to the plaintiff." *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003) (per curiam). . . . "a motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Spain,* 363 F.3d at 1187 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

*Simmons v. Sonyika,* 2004 WL 3015741, *3 (11th Cir., 2004).

Both sides agree that the attachments to the Complaint can be considered by this Court without converting the motion into a Rule 56 motion. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). In addition, "[w]here, as in this case, a copy of a written instrument is attached to the complaint as an exhibit, the written instrument is a part of the complaint and its factual assertions constitute judicial admissions." *Banco del Estado v. Navistar Intern. Transp. Corp.*, 942 F.Supp. 1176, 1179 (N.D.Ill. 1996).

**III. Discussion**

The parties agree that the code section at issue in this case is 12 U.S.C. § 2607(b). That section reads:

> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C.A. § 2607(b). Corresponding federal regulations provide:

> (c) No split of charges except for actual services performed. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service in connection with a transaction

> involving a federally related mortgage loan other than for services actually performed. A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section. The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this part be avoided by creating an arrangement wherein the purchaser of services splits the fee.

24 C.F.R. § 3500.14(c).

The Eleventh Circuit has addressed, in *Sosa v. Chase Manhattan Mortgage Corporation*, 348 F.3d 979 (11th Cir. 2003), the interpretation of RESPA in the context of a motion to dismiss. In *Sosa,* Chase Manhattan Mortgage, as a mortgage lender, charged borrowers a $50 fee for "messenger" or "courier" services. *Sosa*, 348 F.3d at 981. Chase paid <u>part</u> of that fee to third-party independent contractors that provided the messenger or courier services required to complete the loan closing. *Id.* Chase retained a portion of the fee for itself, but did not make the actual deliveries. *Id.* The borrower in *Sosa* contended that, in retaining that fee, Chase accepted a portion of the charge "other than for services actually performed." *Id.*

In holding the dismissal was proper, the Eleventh Circuit wrote:

> The complaint alleges, and we take as true, that Chase charged borrowers $50 for courier or messenger fees, that Chase paid only a portion of that fee to third-party contractors, and that Chase "created the misimpression" that the fees were entirely paid to the third parties. The borrowers have thus contended that Chase accepted a portion of a charge for real estate services. **What is missing is an allegation that the portion of the charge that Chase retained was accepted "other than for services actually performed," i.e., that Chase performed no services that would justify its retention of a portion of the fee**.

*Id.* at 983 [emphasis added].

The Defendant argues that the difference between this case and *Sosa* is that *Sosa* was a "markup" case, and that this is an "overcharge" case. In support of their argument, they cite the Court to the Second Circuit case of *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2d Cir.

2004).

The *Kruse* Court explained the difference between the two types of cases, in the context of its facts, as follows:

> "Overcharges" arise out of settlement services provided by the lender itself but charged to consumers seeking home mortgages for substantially more than the provider's cost. Specifically, the plaintiffs allege that the defendants performed underwriting services--which in this case consist of analyzing a borrower's ability to repay the loan in order to determine whether the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac") will guarantee to purchase the loan on the secondary market, removing most of the lender's risk on the loan--using automated software obtained from Fannie Mae and Freddie Mac at a cost of $20 per loan underwritten. The defendants are said to have charged home mortgage borrowers as much as twenty-five times that amount for the service.
>
> A settlement service provider "marks up" the fee for a settlement service when the provider outsources the task of providing the service to a third-party vendor, pays the vendor a fee for the service, and then, without providing an additional service, charges homeowners seeking mortgages a higher fee for the settlement service than that which the provider paid to the third-party vendor. In this case, the defendants are alleged to have paid third parties to perform tax services, flood certification, and document preparation, and then, without providing further services, to have charged plaintiffs amounts substantially in excess of the amount the defendants paid to the third parties for the services. For example, the plaintiffs alleged that the defendants outsourced document preparation to third parties at a typical per-service cost to the defendants of $20 to $50, and then, without performing any additional services, charged consumers seeking home mortgages $150 to $300 for the service.

*Kruse*, 383 F.3d at 53. In holding that overcharges were not a violation, the *Kruse* Court noted that

> nothing in that language authorizes courts to divide a "charge" into what they or some other person or entity deems to be its "reasonable" and "unreasonable" components. **Whatever its size, such a fee is "for" the services rendered by the institution and received by the borrower.**
>
> It would, moreover, be an odd reading of the statute to conclude that it instructs federal courts to award treble damages, *see* RESPA § 8(d)(2), 12 U.S.C. § 2607(d)(2), for "unreasonable" charges made by financial institutions without giving those courts so much as a hint as to how to differentiate between what is and is not "reasonable." There is nothing in the language of section 8(b) to suggest that

Congress meant for us to create such a regulatory regime out of whole cloth.

We conclude that section 8(b) clearly and unambiguously does not extend to overcharges.

*Id.* at 56.

The Complaint alleges, in pertinent part:

25. This $149 ABC Fee was a separate and distinct charge and distinct line item on the HUD 1 Settlement Statement. The ABC Fee was charged in addition to the "Total Sales/Brokers Commission" of $9350 represented on Plaintiff's HUD 1 Settlement Statement . . ..

* * *

29. At all times relevant to this Complaint, Defendant has unlawfully and on a systematic basis charged and accepted purported settlement related charges, in the form of "ABC FEE[S]," from consumers (the class plaintiffs) without rendering any service in exchange for said fee.

30. In fact, in prior litigation Defendant's Senior Vice President and Chief Operating Officer submitted a sworn affidavit stating that the ABC Fee does not cover any specific service and that the ABC Fee was simply an increase in the price of RealtySouth's commission. *See* Exhibit 2 attached hereto.

31. Thus, no new or additional service is provided for this additional settlement fee with its own separate and distinct line item and charge on the settlement statement. Therefore, RealtySouth's charging and acceptance of the ABC Fee violates RESPA because (1) it is a fee for which no service is rendered and/or (2) it is a duplicative fee for services already rendered as part of the "total sales/broker's commission."

* * *

36. Defendant has unlawfully accepted settlement charges from consumers (reflected on HUD-1 Settlement Statements) in the form of ABC Fees, in connection with federally related mortgage loans, without rendering any service in connection with said charge and/or Defendant has unlawfully charged and accepted ABC Fees as duplicative fees for services already rendered as part of the total sales/broker's commission.

*Complaint*, at 6-8, ¶ 25, 29, 30, 31, 36.[3]

Notably, in this case, the Complaint alleges that the ABC Fee was "simply an increase in the price of RealtySouth's commission," without "new or additional service."[4] The Court is persuaded by the logic of the *Kruse* decision and feels that it is consistent with *Sosa*. Accordingly, to the extent these charges are an overcharge for services that actually were performed, the motion to dismiss will be GRANTED.[5] The Complaint will be DISMISSED, except to the extent it alleges the ABC Fees were charges for which no service was rendered.

DONE, this 2nd day of March, 2005.

**VIRGINIA EMERSON HOPKINS**
**United States District Judge**

[3]Except for paragraph 30, these paragraphs were identified by the Plaintiff at oral argument as making the heart of their claim.

[4]In the Plaintiff's brief, she states that her "allegation is simply that RealtySouth has accepted an unearned settlement charge." *Plaintiff's Opposition to Motion to Dismiss*, at 15. However, the allegations of her Complaint state otherwise.

[5]The Plaintiff contends that the Defendant admits that these fees are unearned. In fact, however, the Defendant's Vice President writes in his affidavit, attached to the Complaint, that the fee is meant to be "an increase in the price or fee that RealtySouth charged for all its brokerage services rendered to both buyers and sellers." Accordingly, RealtySouth contends that the fee is charged for services it performs.