FILED
2005 Oct-07  AM 11:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKI V. BUSBY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) ) | **Civil No. 2:04CV2799-VEH** |
| vs. | ) ) | |
| JRHBW REALTY, INC. d/b/a REALTYSOUTH, et al. | ) ) ) | |
| Defendants. | ) ) | |

## <u>Memorandum Opinion</u>

This is a civil action filed on September 23, 2004, by the Plaintiff, Vicki V.

Busby, "on behalf of herself and all others similarly situated," against the Defendant,

JRHBW Realty, Inc. d/b/a RealtySouth ("RealtySouth"). In her Complaint, Ms.

Busby alleges that she purchased real estate in Jefferson County, and that in

connection with that purchase she entered into a "federally related loan" as that term

is defined under the Federal Real Estate Settlement Procedures Act ("RESPA"), 12

U.S.C. § 2607. Deed and title were formally transferred to the Plaintiff on May 26,

2004. At the closing, RealtySouth added a settlement charge called an "ABC FEE",

in the amount of $149.00, to the Plaintiff's HUD-1 Settlement Statement.[1]  The ABC

FEE was a separate charge from the "Total Sales/Brokers Commission" of $9,350.

She alleges that "[A]t all times relevant to this Complaint, Defendant has

unlawfully and on a systematic basis charged and accepted purported settlement

related charges, in the form of 'ABC FEE[S],' from consumers . . . without rendering

any service in exchange for said fee."  *Complaint*, at 7.  She further alleges that

"RealtySouth's charging and acceptance of the ABC Fee violates RESPA because (1)

it is a fee for which no service is rendered and/or (2) it is a duplicative fee for services

already rendered as part of the "total sales/broker's commission."  *Id.* Count One of

the Complaint charges this as a violation of RESPA at 12 U.S.C. § 2607; 24 C.F.R.

§ 3500.14.

On October 21, 2004, RealtySouth filed a Motion to Dismiss Ms. Busby's

Complaint in its entirety.  On March 2, 2005, the Court dismissed the Complaint

except to the extent it alleges that the ABC Fees were charges for which no service

was rendered.

The Court has pending before it Defendant RealtySouth's Motion for Summary

Judgment.  The basis for RealtySouth's summary judgment motion is that Plaintiff

---

[1]"ABC" stands for Administrative Brokerage Commission.  *Defendant's Motion to Dismiss*, at 1.

has no facts to support her allegations that "no service was rendered" in exchange for

the ABC Fee.   For the reasons stated herein, the motion is due to be **DENIED**.

<b><u>Facts</u></b>[2]

On May 26, 2004, Vicki Busby purchased a home located in Trussville, at 6617

Amy Lane 35173, Jefferson County, Alabama, (Pl. Ex. 5.)  Ms. Busby employed a

RealtySouth real estate agent in connection with her purchase ; that agent was paid

a typical percentage sales commission calculated at one half of 5% of the purchase

price.  (Pl. Ex. 5.)

On May 26, 2004,  at the closing and settlement of her federally related home

loan, Ms. Busby was charged a separate ABC Fee of $149.00 by Defendant

RealtySouth (Pl. Ex. 5.)

RealtySouth accepted the $149 charge despite its failure to provide any

distinct, new, or additional services in exchange for the separate line item fee.  (Pl.

Ex. 6 at ¶ 6; Pl. Ex. 7 at ¶ 7-8; Pl. Ex. 3; Pl. Ex. 4 at 12-14, 43.)  As one RealtySouth

document states: "[s]imply put, the ABC is not intended to cover any specific

service."  (Pl. Ex. 2.)

RealtySouth asserts that its ABC Fee was the result of increasing costs and

---

[2]The Court considers the facts, as it must, in the light most favorable to the Plaintiff. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)**.**

higher demand for consumer services.  However, RealtySouth Sr. VP and COO explained that the ABC Fee is not tied to any "specific new or additional service" (Def's Reply at 8, Doc. 6) and is a "broader fee that covers the increase in the overall cost of doing business". (Pl. Ex. 1.)  The ABC Fee "is a contribution to general overhead expense."  (Pl. Ex. 2.)  Of course, as this Court noted at the Hearing on RealtySouth's Motion to Dismiss the Plaintiff's Complaint, there were other options available to RealtySouth to recoup overhead in lieu of an extra "consumer charge." (Pl. Ex. 3.)  As RealtySouth itself put the point: "[s]o, rather than increasing the percentage of our commissions, we have added a nominal flat commission amount to bridge the gap."  (Pl. Ex. 2.)

RealtySouth began collecting the ABC Fee in the Spring of 2003 as a means to recoup company overhead expenses (Pl. Ex. 3; Pl. Ex. 2) and to "avoid having to address changing agents' commission plans."  (Pl. Ex. 8 at 7.)  RealtySouth chose to add an additional fee as a separate line item on all HUD-1 Settlement Statements. (Pl. Ex. 4 at 74, 147-48.)

RealtySouth deposits consumers' separate $149 checks into its general corporate account as with all other revenue RealtySouth receives; the ABC Fee revenue is not separated or earmarked in any way. (Pl. Ex. 4 at 42.)

Unlike its percentage sales commission, RealtySouth commonly waives the

ABC Fee when consumers protest payment.  (Pl. Ex. 9 at 48-49, 61, 63-64, 79; Pl. Ex.

4 at 58-60, 64-65, 104.)  For example, when Judge William H. Pryor, Jr. refused to

pay the ABC Fee, it was waived and taken off his HUD-1 Settlement Statement.  (Pl.

Ex. 9 at 58-59; Pl. Ex. 10.)  At least one current high-volume RealtySouth agent,

Camille Wooten, has never in her long history with the Company (which predates the

Fee's implementation) collected an ABC Fee under any circumstances.  (Pl. Ex. 9 at

48-49, 79.)

Some RealtySouth agents have been erroneously told that the ABC Fee was

designed to cover document storage; however, RealtySouth affirmatively states that

"that's not what it is for."  (Pl. Ex. 13; Pl. Ex. 9 at 19; Pl. Ex. 4 at 50.)

Additionally, as RealtySouth's documents indicate, a number of RealtySouth

agents have "struggled" with how to explain the ABC Fee to consumers, even as late

as March of 2005.[3]  (Pl. Ex. 11, 14; Pl. Ex. 4 at 112.)

---

[3]  Mr. Brigham, RealtySouth's President and CEO  first stated that he was *not* aware of RealtySouth
agents having trouble explaining the ABC Fee:
> *Q.*      Are you aware that many of your agents have had a hard time explaining the
>        fee to consumers?
> *A.*      I'm not aware of that.
> *Q.*      You are not aware of that?
> *A.*      No.
> *Q. Y*ou are not aware that your agents have a hard time explaining the fee?
> *A.* No.
> *Q.* Your answer is no?
> *A.*  No.

(Pl. Ex. 451-52).  This, despite the fact that he was a named recipient of at least two distinct
emails referring to this problem. (Pl. Ex. 11; 14).

The ABC Fee is unearned because RealtySouth performs  no service and provides no good(s) in exchange for the Fee.  (Pl. Ex. 6 at ¶ 6; Pl. Ex. 7 at ¶¶ 7, 9; Pl. Ex. 9 at 23-24, 63-64.)  As the RealtySouth Manager Meeting Minutes from  January 6, 2005 detail, the ABC Fee is a product of RealtySouth's unwillingness to "address changing agents' commission plans," not the result of any new product or service provided to the consumer.  (Pl. Ex. 8 at 7.)

The fee is not tied to any specific service (Pl. Ex. 6 at ¶ 6; Pl. Ex. 7 at ¶ 7-8; Pl. Ex. 3; Pl. Ex. 4 at 12-14, 43) and RealtySouth does not require the fee be paid on all transactions.  (Pl. Ex. 9 at 48-49, 79; Pl. Ex. 4 at 58-60, 64-65, 104; Pl. Ex. 7 at ¶ 5.) (*But see contra*, Pl. Ex. 4 at 45-46.)  Therefore, the consumer receives the same level of service whether or not an ABC Fee is paid.  (Pl. Ex. 7 at ¶ 9; Pl. Ex. 9 at 60, 63-64; Pl. Ex. 4 at 60-61, 64-65.)  For example, current RealtySouth agent Camille Wooten and former RealtySouth agent Nancy Jo Ferrell both testified that RealtySouth's services remained the same after implementation of the ABC Fee as before implementation of the Fee.  (Pl. Ex. 9 at 63-64; Pl. Ex. 7 at ¶ 9.)

## Summary Judgment Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its
initial burden depends on whether that party bears the burden of proof on the issue
at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real
Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the
burden of proof at trial, then it can only meet its initial burden on summary judgment
by coming forward with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a directed verdict if not
controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such
a showing, the burden shifts to the non-moving party to produce significant, probative
evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its
initial burden on summary judgment in either of two ways.  First, the moving party
may produce affirmative evidence negating a material fact, thus demonstrating that
the non-moving party will be unable to prove its case at trial.  Once the moving party
satisfies its burden using this method, the non-moving party must respond with
positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden
of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u>
show the absence of any evidence in the record in support of a judgment for the non-

8

moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Analysis

In moving for summary judgment, RealtySouth contends that Ms. Busby's Complaint must be dismissed because it is not cognizable under RESPA, and therefore, the only issue before the Court is whether RealtySouth performed any

services in return for the ABC Fee it charged to Ms. Busby.[4]  (Def.  Brief,  p. 8.)

RealtySouth avers that the record evidence consists of two affidavits which establish

that the ABC Fee was "a simple increase in price" for RealtySouth's services which

included finding property to purchase, providing disclosures, providing contract and

other  business  forms,  and  other  related  services.   *(Id.)*   Therefore,  according  to

RealtySouth, because the ABC Fee is a simple price increase, it is not covered by

RESPA, and the Complaint should be summarily dismissed.

However, Ms. Busby contends that the ABC Fee is not merely a price increase,

but instead it is an unearned fee which is strictly prohibited by RESPA.  It is clear

that, at the summary judgment stage, the Plaintiff need only provide the Court with

sufficient evidence that would allow a  reasonable fact finder to find for the non-

moving party.  Therefore, Ms. Busby must provide sufficient evidence that raises a

genuine  issue  of  material  fact  as  to  the  allegations  in  the  motion  for  summary

judgment.  Fed. R. Civ. P. 56.

---

[4]The Court's March 2, 2005 Order and Opinion granting in part, and dismissing in part, Ms. Busby's Complaint, addressed the issue of overcharges.  The Court concluded that Section 8(b) of RESPA does not extend to overcharges.  Therefore, here the Court will address the issue that was not dismissed in that Order, whether or not the ABC Fee was in exchange for services rendered.

Furthermore, Ms. Busby articulates in her brief that, in sharp contrast to the overcharge claim in Kruse, she does not allege an overcharge but, instead, alleges that RealtySouth has accepted an unearned settlement charge.  (Pla. Brief p. 12; Complaint at ¶¶ 29, 31.)  Moreover, Ms. Busby does not contend that the ABC Fee is unreasonable but, instead, contends that it is unearned, thereby in violation of RESPA.

RealtySouth asserts that Ms. Busby's claim that the ABC Fee is an unearned

fee is flawed because services were performed for the fee, or "price increase" as

RealtySouth prefers to refer to it.  RealtySouth further asserts that the price increase

is "part of the price of doing business with RealtySouth."  (Second Affidavit at ¶ 5,

Ex. 1, at ¶6.)  RealtySouth submits an affidavit of C. Tyler Dodge in which he states

that the ABC Fee, in addition to the standard percentage commission, together make

up the total commission for performing "a whole range of services for customers".

(Second Dodge Aff. at ¶ 5, Ex. 1 at ¶ 6.)  He explained that RealtySouth merely

imposes a flat administrative commission for its services as a way of increasing its

brokerage commission without splitting the additional income with its sale agents.

(*Id.*) According to Dodge, RealtySouth desired such an increase because it was faced

with increased technology costs, increased regulatory compliance costs, and an

increase in commission splits that it needed to pay its agents. (*Id.*)  Ms. Busby on the

other hand contends that RealtySouth performs no additional services for the ABC

Fee.

The evidence submitted by Ms. Busby at least creates a genuine issue of

material fact as to whether RealtySouth in fact performed services for the $149.00

ABC Fee.  Ms. Busby submitted testimony of  Jennifer Brantley, a former licensed

real estate agent for RealtySouth.  In her declaration, Ms. Brantley explained, "[t]he

ABC Fee is a junk fee and RealtySouth performs no service for the fee." (Pl. Ex. 6 at ¶ 6; Declaration of Jennifer Brantley, ¶ 6.) Brantley stated that, at closing, the "ABC surcharge" was charged to some, but not all, RealtySouth clients. (*Id*. at ¶ 5.) She further stated that she questioned the ABC Fee at a sales meeting, but was never given a straight answer; her "uneasiness with collecting the ABC Fee" was one of the reasons she left RealtySouth. (*Id*. at ¶¶ 7-8.)

Ms. Busby also submitted evidence of testimony by another former RealtySouth real estate agent who left because of the ABC Fee. She states that "[t]he ABC Fee charged by RealtySouth is an additional fee and to my knowledge RealtySouth provides no added service for the fee. Likewise, RealtySouth provides no tangible good or product for the Fee," and, "the consumer receives no additional benefit from the payment of the $149 fee." (Pl. Ex. 7, Declaration of Nancy Jo Ferrell, at ¶¶ 7-8.) Next, she explains "[t]he level of service provided by RealtySouth and their [sic] agents was the same prior to the implementation of the ABC Fee as it was after the Fee was implemented. (*Id*. at ¶ 9.)

Ms. Busby also provided the Court with the testimony of a current RealtySouth agent, Camille Wooten. (Pla. Ex. 9.) Ms. Wooten revealed that, unlike its percentage sales commission, RealtySouth commonly waives the ABC Fee when consumers protest payment. (Pl. Ex. 9, p. 48-49, 61, 63-64, 79; Ex. 4, p. 58-60, 64-

65, 104.)   Ms. Busby argues, that as a logical consequence, the consumer receives

no benefit from paying the Fee in those instances where it is actually collected by

RealtySouth.  Furthermore,  Ms. Wooten stated that she has never collected an ABC

Fee, but she nonetheless provides her clients with the highest level of service

available from RealtySouth.  (Pl. Ex. 9 at 3 ¶¶ 6, 48, 49, 60-61, 63-64, 79.)

In his deposition testimony, RealtySouth's President and CEO, Tommy

Brigham, in fact concedes that no services are provided for the ABC Fee:

> *Q.*      Would you please explain to the ladies and gentleman of the jury
> what new or additional service RealtySouth provides to its customers in
> exchange for payment of the ABC fee which was not previously
> provided prior to the implementation of the fee.
> *A.*      Well, we provide a wide array of services.  We have enhanced
> dramatically our technology platforms, making it far more robust and
> user friendly—consumer friendly for the broader public.  We have
> enhanced our training and business center to provide a variety of outlets
> to provide superior service for all our our constituencies.
>        ...
> *Q.*      And those services that you are speaking of, are those in any way
> linked to the consumer's payment of the ABC fee?
> *A.*      No.
>        ...
> *Q.*      So RealtySouth provides no new or additional specific service in
> exchange for the ABC fee?
> *A.*      No.
>        ...
> *Q.*      Okay.  And you can't isolate any specific service that goes toward
> the ABC fee?
> *A.*      No.

(Pl. Ex. 4,  at 12-14, 43.)

Ms. Busby submitted an email from Sr. VP and COO C. Tyker Dodge that she believes is also indicative of the assertion that the ABC Fee was not a mere price increase. Mr. Dodge describes the Fee as "a broader fee that covers the increase in the overall cost of doing business." (Pla. Ex. 1.) Ms. Busby contends that this statement proves that no new services are being performed in exchange for this Fee.

Additionally, Ms. Busby brings to the Court's attention an email from one RealtySouth employee to the President and CEO of RealtySouth regarding the ABC Fee.  The email refers to the ABC Fee as a "Doc" fee and further compares it to other "junk fees" in the industry.  (Pl. Ex. 12; Pl. Ex. 4 p. 78-79.)  Ms. Busby asserts that the evidence provided, especially the emails, illustrate that the ABC Fee was simply designed to increase profits and that it was easier for RealtySouth to charge the uneducated consumer a nominal junk fee rather than renegotiate commission splits with savvy Realtors.  (Pl. Brief, p. 5.)

Finally, Ms. Busby argues that by charging two separate fees at closing, a traditional brokerage fee and the ABC Fee, and provide no specific service for the ABC fee, RealtySouth has essentially insulated itself from challenge under RESPA. RESPA only encompasses fees for which there is no service and, by lumping the ABC Fee with the traditional commission, a fee for which clearly there is service, RealtySouth cannot be held liable under RESPA. Ms. Busby asserts that this is not

14

what was intended by the creation of RESPA.

Viewing the evidence in the light most favorable to the non-movant, Busby clearly proffers substantial evidence supporting the existence of a genuine issue of material fact as to whether RealtySouth's ABC Fees were charges for which no service was rendered.

## Conclusion

Based upon the foregoing, RealtySouth's motion for summary judgment will be **DENIED** as to Ms. Busby's Complaint.  The Court finds that material issues of fact remain and that RealtySouth is not entitled to judgment as a matter of law as to Ms. Busby's remaining claim that the ABC Fees were charges for which no service was rendered.  A separate order shall be entered.

**DONE** and **ORDERED** this 7th day of October, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge