FILED
2006 Jul-20  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **VICKI V. BUSBY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **vs.** | ] | **CIVIL NO. 2:04-CV-2799-VEH** |
| | ] | |
| **JRHBW REALTY, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR CLASS CERTIFICATION

Pending before the Court is the Motion for Class Certification filed by Plaintiff Vicki Busby pursuant to Fed. R. Civ. P. 23. (doc. 63). The underlying claim in this matter is based on an alleged violation by Defendant RealtySouth of the Real Estate Settlement Procedures Act.  This Court has been extensively briefed on the issues, as the parties have submitted briefs and exhibits in support of their respective positions. The parties have also presented oral argument in a class certification hearing held on July 12, 2006.  The Motion is now ripe for disposition.

For the reasons hereinafter stated, this Court has determined that the motion for class certification is hereby **DENIED**.

I.    **Background**

    *A.    Introduction.*

    This matter arises out of a putative class action concerning the Defendant's

acceptance of a settlement service charge, *i.e*., the Defendant's "ABC Fee," allegedly

in violation of the Federal Real Estate Settlement Procedures Act, 12 U.S.C. 2601 *et.*

*seq*.  The Real Estate Settlement Procedures Act (hereinafter "RESPA") prohibits the

acceptance or collection of any settlement service charge "for which no service was

performed and no goods were furnished."  *Sosa v. Chase Manhattan Mortg. Corp*.,

348 F.3d 979, 981-82 (11th Cir. 2003).  The Plaintiff and putative class representative

requests this  Court  to  certify the following proposed class, as defined in Busby 's

Complaint:

> All individuals (expressly excluding the federal judiciary and the
> judiciary's immediate family members for the Northern District of
> Alabama), whether or not having any relationship with Defendant,
> who have paid an "ABC Fee" to Defendant pursuant to [a] real estate
> closing and/or settlement in connection with a   federally related
> mortgage loan during the applicable limitations period whose
> transactions are covered and protected by RESPA regulations.

Pl. Comp. at ¶ 12.

    *B.    Factual Overview*

    The putative class representative, Vicki Busby,  purchased  a  home  in

Jefferson County, Alabama on May 26, 2004; the home was located in the city of

Trussville, at 6617 Amy Lane 35173.   (HUD Settlement Statement, p.1-2.)   In connection with  that  purchase of real estate, Ms. Busby employed a  RealtySouth real  estate  agent  who earned a sales commission based on the percentage of the purchase price.  (HUD Settlement Statement, p.1-2.)  At the closing and settlement of Ms. Busby's federally related home loan, RealtySouth charged and collected the ABC Fee—an acronym for "Administrative Brokerage Commission"—of $149.00, a fee separate and distinct from the commission.  (HUD Settlement Statement, p.1-2.) RealtySouth accepted the ABC Fee despite the admission  that  it  failed  to  perform or provide any new, distinct, or additional service in exchange for the separate line item fee.  (Decl. of Jennifer Brantley at ¶ 6; Decl. of Nancy Jo Ferrell at ¶ 7-8; Notes of the Brokerage Administrative Commission re: Maintaining Profitability; Depo. of Thomas H. Brigham, Jr., Aug. 16, 2005 at 12-14, 43)   As   the  Defendant has conceded: "[s]imply put, the ABC  is  not  intended to cover any specific service." ("The ABCs of the ABC")

RealtySouth made the decision to begin collecting the unearned  ABC Fee in the Spring of 2003 as a means to recoup company overhead expenses (Notes of the Brokerage Administrative Commission re: Maintaining Profitability; "The ABCs of the ABC").  The RealtySouth Manager Meeting Minutes from  January 6, 2005 illustrate that the ABC Fee is a product of RealtySouth's unwillingness to "address

3

changing agents' commission plans," not the result of any new product or service provided to the consumer.[1]   (RealtySouth Mtg. Minutes, Jan. 6, 2003. at 7). (RealtySouth Mtg. Minutes, Jan. 6, 2003. at 7).

RealtySouth has collected the ABC Fee approximately 15,000 times since the fee's inception.  (RealtySouth's Supplemental Response to Plaintiff's Interrogatories at ¶ 18).  The $149 fee goes into RealtySouth's general corporate account and is not earmarked in any way.  (Depo. of Thomas H. Brigham, Jr., Aug. 16, 2005 at 42). Some RealtySouth agents collect the ABC Fee,  while others refused to do so. (Depo. of Camille Wooten, July 20, 2005 at 48-49, 79).  The fee is not tied to any specific service (Decl. of Jennifer Brantley at ¶ 6; Decl. of Nancy Jo Ferrell at ¶ 7-8; Depo. of Thomas H. Brigham, Jr., Aug. 16, 2005; RealtySouth's Supplemental Response to Plaintiff's Interrogatories at 12-14, 43) and although it does not take this position in its argument, RealtySouth does not require the fee be paid on all transactions.  (Depo. Camille Wooten, July, 20, 2005 at 48-49, 79; RealtySouth's Supplemental Response to Plaintiff's Interrogatories at 58-60, 64-65, 104; Decl. of Nancy Jo Ferrell at ¶ 5) (*but see contra*, RealtySouth's Supplemental Response to Plaintiff's Interrogatories at 45-460.) Current RealtySouth agent Camille Wooten and

---

[1] Any lost revenue or exorbitant overhead expense could have been recouped simply by restructuring agent commission plans, in other words, adjusting the split between agent and company commissions.  However, RealtySouth's ABC Fee is not split with the agent and goes wholly to the general corporate account.

former RealtySouth agent Nancy Jo Ferrell both testified that RealtySouth's services remained the same after implementation of the ABC Fee.  (Depo. Camille Wooten, July, 20, 2005 at 63-64; Decl. of Nancy Jo Ferrell at ¶ 9).

RealtySouth's documents indicate that, even  as  late as March of 2005, many agents "struggled" with how to explain the Fee to consumers.  (Email from Ty Dodge re: The ABCs of the ABC, 11; Depo. of Thomas H. Brigham, Jr., Aug. 16, 2005 at 112).  One former agent recently stated in deposition: "the reason I quit RealtySouth—one of the reasons was the ABC Fee…One of the things I never understood was the ABC Fee.  I would ask in  the  sales meeting what it was for and pretty much just got a dirty look.  And no one answered my question."[2]

## B.   *Procedural Posture.*

This is a civil action filed on September 23, 2004, by Vicki V. Busby, "on behalf of herself and all others similarly situated," against the Defendant, JRHBW Realty, Inc. d/b/a RealtySouth ("RealtySouth").  In her Complaint, Ms. Busby alleges that she purchased real estate in Jefferson County, and that in connection with that purchase  she entered into a "federally related loan" as that term is defined under the Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.

Inthe Complaint, Busby alleges that "[a]t all times relevant to this Complaint,

---

[2] *See* Jennifer Brantley's dep. P.37..

5

Defendant has unlawfully and on a systematic basis charged and accepted purported settlement related charges, in the form of 'ABC FEE[S],' from consumers . . . without rendering any service in exchange for said fee." (*Complaint*, at 7).  She further alleges that "RealtySouth's charging and acceptance of the ABC Fee violates RESPA because (1) it is a fee for which no service is rendered and/or (2) it is a duplicative fee for services already rendered as part of the "total sales/broker's commission." *Id.* Count One of the Complaint charges this as a violation of RESPA at 12 U.S.C. § 2607; 24 C.F.R. § 3500.14.

On October 21, 2004, RealtySouth filed a Motion to Dismiss Busby's Complaint in its entirety.  On March 2, 2005, this Court dismissed the Complaint except to the extent that it alleges that the ABC Fees were charges for which no service was rendered.

On April 20, 2005, RealtySouth filed a Motion for Summary Judgment.  The motion was grounded in the assertion that were no facts to support Busby's allegation that "no service was rendered" in exchange for the ABC Fee.   The Court denied RealtySouth's motion.

Currently pending before the Court is a Motion for Class Certification filed by Busby.

6

## II.    Legal Standard for Class Certification[3]

Class actions are governed by Fed.R.Civ.P. 23. With respect to such actions,

the Supreme Court has stated generally:

> The class-action device was designed as 'an exception to the usual rule
> that litigation is conducted by and on behalf of the individual named
> parties only.' *Califano v. Yamasaki,* 442 U.S. 682, 700-701, 99 S.Ct.
> 2545, 2557- 2558, 61 L.Ed.2d 176 (1979). Class relief is 'peculiarly
> appropriate' when the 'issues involved are common to the class as a
> whole' and when they 'turn on questions of law applicable in the same
> manner to each member of the class.' *Id.,* at 701, 99 S.Ct., at 2557. For
> in such cases, 'the class-action device saves the resources of both the
> courts and the parties by permitting an issue potentially affecting every
> [class member] to be litigated in an economical fashion under Rule 23.'
> *Ibid.*

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364,

72 L.Ed.2d 740 (1982).

A district court is to make the determination of whether an action should

proceed as a class action "[a]s soon as practicable after the commencement of an

action brought as a class action...." Fed.R.Civ.P. 23(c)(1). "The decision to certify is

within the broad discretion of the court, but that discretion must be exercised within

---

[3] The Supreme Court has stated that "[t]he class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only . . .'" and is appropriate where the "device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citations omitted).  The Court conducts its analysis of Plaintiff's claims in light of these principles.

the framework of rule 23." *Culpepper v. Inland Mortgage Corp.,* 189 F.R.D. 668, 669 (N.D.Ala.1999) (quoting *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996)).

Plaintiff's Motion for Class Certification is governed by the standards set forth in Rule 23, Fed.R.Civ.P. *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1187 (11th Cir.2003) (explaining that Rule 23 furnishes the "legal roadmap" which courts must follow in assessing propriety of class certification). "For a district court to certify a class action, the named plaintiffs must have standing[4], and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir.2004); *Valley Drug,* 350 F.3d at 1188 ("Failure to establish any one of [the Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification"). It is well established that "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug,* 350 F.3d at 1187; *see also London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir.2003). A district court's ruling on a class certification motion will be reviewed on appeal for abuse of

---

[4]In the case presently before the Court, the Defendant does not dispute that the Busby has standing.

discretion. *See Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir.2004) ("Questions concerning class certification are left to the sound discretion of the district court."); *Murray v. U.S. Bank Trust Nat'l Ass'n,* 365 F.3d 1284, 1288 (11th Cir.2004); *Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir.2003) (district court decision on class certification will not be disturbed as long as it remains within Rule 23 parameters, even if appeals court would have resolved issues differently).

In performing the Rule 23 analysis, the Court may not inquire into the merits of Plaintiff's claims at this preliminary stage. *See, e.g., Cooper,* 390 F.3d at 712 (repeating well-worn admonition that Rule 23 does not confer upon a court authority to conduct preliminary merits inquiry in making class certification determination); *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985) (concurring with district court's assessment that it "could not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"). Nonetheless, in conducting the requisite "rigorous analysis," the district court may look beyond the allegations of the Complaint. *See Wright,* 201 F.R.D. at 534 ("In determining whether to certify a class, a court may consider both the allegations of the complaint and the supplemental evidentiary submissions of the parties").

## III.   Analysis

### 1.      Rules 23(a) and 23(b)(3)

In the instant case, Plaintiff requests that the Court certify a class under Rule 23(a) and Rule 23(b)(3). Those provisions state the following:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> \*\*\*
> \*\*\*

> **(3)** the court finds that the questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. (Emphasis added.)

Fed. R. of Civ. Proc. Rule 23.

## 2.    Class Definition

Although not an express Rule 23 requirement, it is imperative that the class be definable in a reasonable manner. "In order for a party to represent a class, 'the class

sought to be represented must be adequately defined and clearly ascertainable.' "
*Adair v. Johnston,* 221 F.R.D. 573, 577 (M.D.Ala.2004) (quoting *DeBremaecker v.
Short,* 433 F.2d 733, 734 (5th Cir.1970)).   The Defendants have challenged the
Plaintiff's proposed class definition.   The Plaintiff proposes the following class:

> All individuals (expressly excluding the federal judiciary and the
> judiciary's immediate family members for the Northern District of
> Alabama), whether or not having any relationship with Defendant, who
> have paid an "ABC Fee" to Defendant pursuant to a real estate closing
> and/or settlement in connection with a federally related mortgage loan
> during the applicable limitations period whose transactions are covered
> and protected by RESPA regulations.

The Court has considered whether the proposed class is precisely defined and whether
the named Plaintiff is a member of the proposed class.   *See Bentley v. Honeywell
Intern., Inc.,* 223 F.R.D. 471, 477 (S.D.Ohio 2004) ("Before delving into the 'rigorous
analysis' required by Rule 23, a court first should consider whether a precisely
defined class exists and whether the named plaintiffs are members of the proposed
class.").   The Court finds that the proposed class definition meets the applicable legal
standard and finds that the named Plaintiff is in fact a member of the class[5].   Busby
asserts that she paid the ABC Fee she was charged by RealtySouth as a separate line

---

[5]   In determining whether a class is adequately defined, courts consider whether the
proposed definition "specif[ies] a particular group that was harmed during a particular time
frame, in a particular location, in a particular way" and "facilitat[es] a court's ability to ascertain
its membership in some objective manner." *Bentley v. Honeywell Intern., Inc.,* 223 F.R.D. 471,
477 (S.D.Ohio 2004).

item, without receiving any goods or services in exchange for the separate line item charge.

### 3.   Rule 23(a) Considerations

#### A.   *Numerosity*

The Eleventh Circuit has recognized that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, [and] more than forty adequate . . .'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (citations omitted). Plaintiffs have demonstrated that the proposed class is sufficiently numerous to satisfy Rule 23(a)[6].

#### B.   *Commonality/Typicality*

The Federal Rules of Civil Procedure authorize class certification only where "there are questions of law or fact common to the class" (the "commonality" requirement) and "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (the "typicality" requirement). Rule 23(a)(2), (3). The Eleventh Circuit has opined that these requirements, while distinct, are interrelated and overlapping, inasmuch as "[b]oth requirements focus on whether a sufficient nexus exists" between the claims of class representatives and those of other class members to warrant class certification. *Cooper v. Southern Co.,* 390 F.3d 695,

---

[6] Defendant concedes that Plaintiff has met the numerosity requirement.

713 (11th Cir.2004) (quoting *Prado-Steiman v. Bush,* 221 F.3d 1266, 1278 (11th Cir.2000)); *see also General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."); *Prado-Steiman,* 221 F.3d at 1278-79 ("the commonality and typicality requirements of Rule 23(a) overlap").[7] The critical function of the typicality/commonality inquiry is to verify that named plaintiffs' incentives are aligned with those of absent class members to ensure that the latter's interests are properly served. *See Prado-Steiman,* 221 F.3d at 1279. The Court will consider the commonality and typicality requirements separately, but recognizes that the distinctions between them may be blurry.

### a.     *Commonality Requirement.*

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class." *See e.g., Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999). The threshold question of commonality is not high, and "is generally met when there is a common question of fact, *or* of law." *Id.* (emphasis added).

---

[7] Typicality and commonality are generally distinguished by positing that the former weighs individual characteristics of a named plaintiff relative to the class, while the latter examines the group characteristics of the class as a whole. *See Cooper,* 390 F.3d at 714; *see also Piazza v. Ebsco Industries, Inc.,* 273 F.3d 1341, 1346 (11th Cir.2001) ("Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class.")

"Commonality also may be established by a showing that the action of all members arises from a common nucleus of operative facts." *Id.* at 667. Moreover, "[c]ommonality may exist where the party opposing the class has engaged in a course of conduct that affects all class members and gives rise to a plaintiff's claim." *Id.*; *see also Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 658 (N.D. Ala. 2002).

In her Class Action Complaint, Busby identifies numerous common questions of law and fact in this action, including the following:

    i.    Whether Defendant's practice of collecting and accepting an ABC Fee is violative of the Federal Real Estate Procedures Act, codified at 12 U.S.C. §2607.

    ii.    Whether, the ABC Fee charged to Busby, as well as many other RealtySouth customers ,was a separate line item fee for which no specific services were provided?  (As suggested by significant generalized evidence set forth by Busby.)

Based on the common  question of law and common statement of fact[8], the Court finds that the Plaintiff has met the commonality requirement of Rule 23(a).

### b.    *Typicality Requirement*

For a plaintiff to meet Rule 23(a)'s requirement of typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members . . ." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001); *see also*

---

[8] The list of two provided common questions of law and fact is by no means intended to be an exhaustive list.

*Hines*, 334 F.3d at 1257 ("Inquires into typicality focus on the similarities between the class representative's claims and the claims of the individuals in the putative class."); *Cox*, 784 F.2d at 1557 ("The claims actually litigated must simply be those fairly represented by the named plaintiffs.").   Stated another way, "typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines*, 334 F.3d at 1256.  Moreover, typicality may be present even when "substantial factual differences" exist, so long as there "is a 'strong similarity of legal theories.'" *Murray*, 244 F.3d at 811; *see also Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala. 2001) ("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical.") (citations omitted).

For largely the same reasons that Plaintiff's claims meet the commonality requirement, Plaintiff's claims are also typical of those of all class members.  In the case presently before the Court, there is no material variation in the fact patterns among the claims of the class members; the claims of each class member, including Busby, allege that the Defendant charged the class member an unearned ABC Fee in the amount of $149.00.  Busby's claim is typical of the putative class because she alleges that she and the other class members were charged the ABC Fee in violation

of RESPA. Defendants acknowledge the fact that the typicality test under Rule 23(a) attempts to ensure that the named plaintiff's interests are substantially aligned with those of absent class members.   RealtySouth assert that there several facts which render Busby atypical of many members of the putative class.  First, they point out that Busby seeks to represent both buyers and sellers; they contend that buyers and sellers received different services and paid different amounts in overall brokerage fees, sellers often paying more brokerage fees that buyers.  Thus, Defendant contends that Busby's claim is not typical of the members of the class.  The Court disagrees. Busby seeks to represent individuals who paid the ABC Fee, a separate line item fee, for which they received no services.  Whether or not the individual was a buyer or seller  is irrelevant in relation to whether Busby's claim that the ABC Fee violated RESPA is typical to the claims of putative members of the class.

Next,  RealtySouth states that there were certain circumstances in which individuals would negotiate the brokerage fee to balance out the ABC Fee. However the critical issue here is whether the ABC Fee violated RESPA by virtue of being a fee for which there was no service rendered to those who paid it.  In the interest of avoiding redundant analysis, the Court will examine this issue in more detail under the appropriate heading Predominance.

     **C.**    ***Adequacy***

Rule 23(a) requires that both the representative plaintiff and the plaintiff's counsel "will fairly and adequately represent the class." *Amchem Prods., Inc. v. Windser*, 521 U.S. 591, 625 (1997); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). A determination of adequacy entails a two part inquiry of "(1) whether any substantial conflicts of interest exist between the named plaintiff and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-728 (11th Cir. 1987) ("[t]he adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."). While there is no generally applicable test for adequacy of representation within the Eleventh Circuit, the representative plaintiff should "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick*, 827 F.2d at 726-728. Furthermore, the class representative's interests must be such that he will "assert and defend the interests of [all] of the [class] members," with "forthrightness and vigor." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (citations omitted).

RealtySouth challenges the adequacy of Busby and her counsel by alleging that Busby's counsel violated Rule 7.3 of the Alabama Rules of Professional Conduct.

The Court finds it necessary, albeit elementary, to lay out the language of the pertinent Rule for the benefit of Defendant's counsel and to ensure that said counsel for RealtySouth comprehends the rule.

Rule 7.3 of the Alabama Rules of Professional Conduct states in pertinent part:

(a)     A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no familial or current or **prior professional relationship**, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.  A lawyer shall not permit employees or agents of the lawyer to solicit on the lawyer's behalf.  A lawyer shall not enter into an agreement for or charge a fee for professional employment obtained in violation of this rule.

The first and most significant counter-argument to Defendant's assertion involves the language of the rule which excludes certain potential clients from the general prohibition against solicitation of clients by an attorney for professional employment.  Clearly, even a cursory reading of the rule shows that the language of Rule 7.3 does **not** in fact require the existence of a prior **attorney-client** relationship to permit an attorney to engage in employment discussions with an individual; instead, under rule 7.3, there must only have been a prior **professional relationship** between the attorney and the individual to circumvent the prohibition against client solicitation.

In the present case, Defendant contends that Ms. Busby was unethically

solicited as a client by Plaintiff's counsel.  However, the testimony of Mr. Soma reveals that prior to becoming  Plaintiff's counsel in the present case, Mr. Soma was the closing attorney involved in the business transactions pertaining to the purchase of her house; he explained the closing documents and the HUD-1 statements to Ms. Busby and engaged in discussions concerning the transactions.  Defendant contends that Mr. Soma's prior professional relationship with Mr. Busby is not sufficient under Rule 7.3[9]; however, this Court steadfastly disagrees.  Notably, one week prior to filing its briefs, Defendant was advised that Ms. Busby's counsel had reviewed the Rules, consulted with the general counsel of the Alabama State Bar, and found RealtySouth's accusations pertaining to a Rule 7.3 violation to be erroneous. Notwithstanding this, RealtySouth's counsel decided to file allegations  asserting an ethics violation in this federal court.[10]  During oral arguments, the Court inquired as to whether RealtySouth's counsel had reported this alleged ethics violation to the Alabama State Bar as mandated by the rules and whether, Defendant's counsel had itself violated the code of ethics by failing to report such conduct.  Defendant's

---

[9] Defendant cited to numerous opinions that discussed their interpretation of "prior professional relationship"; however, the only case cited to from the State of Alabama did not reveal how the courts or the State Bar defines professional relationship.  Therefore, the Court will make its own determination of the issue.

[10] But chose not to file a grievance, despite defense counsel's knowledge of its affirmative obligation to do so.  *See* Ala. Code of Prof. Conduct, Rule 8.3.

counsel conceded that no reporting had occurred and that the issue was not what he considered a "major issue" in Defendant's effort to convince the Court that class certification was inappropriate.

This Court does not find any evidence of unethical conduct by Mr. Soma and furthermore finds that no conduct occurred which would give rise to a question of inadequacy under Rule 23(a). There being no evidence that Plaintiff's interests or the interests of her counsel have or will conflict with those of the unnamed class members, the Court finds that, pursuant to Rule 23(2), adequacy of representation exists as to both the named plaintiff and her counsel.

### 4.    Rule 23(b) Requirements

#### A.    *Rule 23(b)(3)*

Rule 23(b)(3) requires a plaintiff to show that

> common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior..for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615.

Rule 23(b)(3)'s requirements are aimed at situations where certifying a class would be more efficient than maintaining individual actions, and at the same time provide "uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." *Amchem*, 521 U.S. at 615

(quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes). In determining whether a class action meets the predominance and superiority criteria, the Court considers

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).[11] Addressing Rule 23(b)(3), the Supreme Court noted that, at times, the importance of each individual's class member's own particular interest will preclude class certification. *Amchem*, 521 U.S. at 616 (citing Fed. R. Civ. P. 23(b)(3) advisory committee's notes). In contrast, a class may be certified where manageable, when class claims are highly cohesive and "the amounts at stake for individuals" are "so small that separate suits would be impracticable." *Id*.

### a.    *Predominance*

### 1.    *Legal Standard*

With respect to predominance, the rule provides that class certification is proper pursuant to Rule 23(b)(3) only where "questions of law or fact common to the members of the class predominate over any questions affecting only individual

---

[11]   While each of Rule 23(b)(3)'s criteria provide the Court with guidance in making a certification decision, the list of factors to consider is not exhaustive. 521 U.S. at 615.

members."  As the Advisory Committee noted, "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." *Rule 23(b)(3)*, Advisory Notes to 1966 Amendment. Although superficially similar, the Rule 23(b)(3) predominance requirement is "far more demanding" than the Rule 23(a) commonality requirement. *Cooper,* 390 F.3d at 722; *see also Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997) ("The predominance inquiry ... is far more demanding than Rule 23(a)'s commonality requirement."); *Noble,* 224 F.R.D. at 339 (similar); *O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 339 (C.D.Cal.1998) ("For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact merely exist, as it is under Rule 23(a)(2)'s commonality requirement."). The predominance requirement is manifestly not satisfied if, as a practical matter, resolution of common issues will "break [ ] down into an unmanageable variety of individual legal and factual issues." *Cooper,* 390 F.3d at 722 (quoting *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir.1996)). Thus, the Eleventh Circuit has declared that Rule 23(b)(3) cannot be satisfied when it appears that most of Plaintiff's claims will stand or fall depending on individual-specific factual issues. *See Cooper,* 390 F.3d at 722.

At the heart of the predominance inquiry is an examination of each claim by the named plaintiff and its similarity to the claims of the proposed class. *See Rutstein*

*v. Avis Rent-A-Car Systems, Inc.*, 211 F. 3d 1228, 12359 (11th Cir. 2000) ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each member's underlying cause of action.")  If a determination of liability turns "upon highly individualized facts", then common issues of law or fact do not predominate.  *See id.* at 1235-1236 (*quoting McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).  However, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (citation omitted).

### *i. Legal Issues*

The legal issues implicated by Busby's RESPA claim are identical to the issues presented by each class member.  One uniform Federal law, the Federal Real Estate Settlement Procedures Act, codified at 12 U.S.C. § 2607, sets the applicable standards.  Thus, predominance of legal issues is satisfied.[12]

---

[12] Plaintiff states a claim under RESPA section 8(b), codified at 12 U.S.C. § 2607(b). See Complaint, ¶28.  Plaintiff has not made claims under Section 2607(a) "business referrals," also known as the kickback provision of RESPA, and Plaintiff does not claim that RealtySouth engaged in an unlawful price increase.  Nor has Plaintiff claimed that the ABC fee constitutes charging more than the reasonable value of RealtySouth's services.   Rather, Plaintiff plainly claims that the $149 ABC Fee that RealtySouth charges is a fee for which no service is performed  in violation of 12 U.S.C. § 2607(b).

### *ii. Factual Issues*

Factual issues must also predominate.  RealtySouth claims that, according to

HUD's 2001 SOP and the *Heimmermann* case, the individualized issues associated

with its RESPA 8(c)(2) defense preclude class certification because resolving the

issue of whether RESPA 8(c)(2) applies to the ABC Fee and therefore requires a total

reasonable compensation analysis,  individualized questions of fact predominate.[13]

Ms. Busby's claim under RESPA is that she and everyone else who paid the

ABC Fee to RealtySouth paid a fee that violates Section 8(b) of RESPA as an

unearned or duplicative fee.  Ms. Busby argues that, as in *Dujanovic*, there is "only

---

The 2001 SOP clearly states,

> Sections 8(a) and 8(b) contain distinct prohibitions.  Section 8(a) prohibits the giving or acceptance of any payment pursuant to an agreement or understanding for the referral of settlement service business involving a federally related mortgage loan; it is intended to eliminate kickbacks or compensated referral arrangements among settlement service providers.  Section 8(b) prohibits the giving or accepting of any portion, split, or percentage of any charge other than for goods or facilities actually provided or services performed; it is intended to eliminate unearned fees."

[13] RESPA 8(c) states the following:

> Nothing in this section shall be construed as prohibiting...(2) the payment to any person of a bona fide salary or compensation or other payments for goods or facilities actually furnished or for services actually performed...

12 U.S.C. 2007(c)(2).

one common issue presented for trial: whether RealtySouth's collection of the ABC

Fee from consumers...is a violation of RESPA."  (Pl. Br. at 19).  In *Dujanovic*, the

plaintiff complained about the payment of a so-called "yield spread premium"

("YSP") by his lender Mortgage America to various mortgage brokers as part of a

loan closing.  *Dujanovic v. Mortgage America, Inc.*, 185 F.R.D. 660, 662 (N.D. Ala.

1999).  As the Eleventh Circuit has explained, a YSP is:

> a payment made by a lender to a broker in exchange for that
> broker's delivering a mortgage that is above the 'par rate' being
> offered by the lender.  Briefly stated, the payment is typically a
> certain percentage of the total amount of the loan; the exact
> percentage is determined by the extent to which the actual interest
> rate exceeds the par rate.

*Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1259 (11th Cir. 2002).

In *Dujanovic*, and in many other similar cases, plaintiffs attacked the YSPs being paid

to mortgage brokers under Section 8 of RESPA because "the borrower has already

paid the broker for its services in the form of an origination fee" and "the yield spread

premium was paid 'without regard to the work performed by the brokers and without

regard to the amount of compensation paid by the class members to the brokers in the

form of origination fees or other fees.'"  *Dujanovic*,  185 F.R.D. at 663.

    With respect to class certification, like the Plaintiff in the present case, the

*Dujanovic* court adopted the argument "that there was one common predominant

claim": whether the lender's payment of a YSP to a broker violates RESPA when the

broker also received a loan origination fee from the borrower. *Dujanovic*, 185 F.R.D.

at 669.  Defendants in *Dujanovic* argued that Section 8(c)(2) of RESPA mandated

that each YSP fee be reviewed for reasonableness since Section 8(c)(2) of RESPA

exempts completely from Section 8's prohibition any payment "for goods or facilities

actually furnished or for services actually performed. 12 U.S.C. § 2607(c)(2)." *Id*. at

663.  However, the *Dujanovic* court held that there was no need to engage in the

reasonableness inquiry advocated by defendants, reasoning that:

> The question whether certain payments might be regarded as
> reasonable payments for actual goods and services arises only if
> plaintiff fails in his proof that there is no link whatsoever between
> the payment of the yield spread premium and any goods and
> services provided by the broker.

*Dujanovic*, 185 F.R.D. at 669.  Thus, because the YSP was calculated and paid

without  knowing the services the broker had performed, the Court held that the fee

had not been paid for services and any reasonableness inquiry was unnecessary such

that common questions predominated and could be certified. *Id.* at 673.  Other courts

ruled the same way,[14] but many more disagreed.[15]

---

[14] See, e.g., *Heimmermann v. First Union Mortgage Corp.*, 188 F.R.D. 403, 306-07 (N.D. Ala. 1999), *vacated by,* 305 F.3d 1257 (11th Cir. 2002), and cases cited in *Dujanovic*, 185 F.R.D. at 671-672.

[15] *See, e.g.,* cases cited in *Dujanovic*, 185 F.R.D. at 669-670 and 670 n.13, 14 and 15.

This Court acknowledges that *Dujanovic* would be persuasive for Ms. Busby if it were still good law on this point; however, subsequent to the decision in *Dujanovic*, a HUD 2001 Policy Statement on mortgage broker compensation demonstrated that the reasoning in *Dujanovic* and other similar cases was flawed. The 2001 Policy Statement emphasized that in deciding whether a given fee like the YSP was permissible, one had to look at whether the broker provided goods or services of the kind typically associated with the transaction and then whether the ***total compensation*** paid to the broker was reasonably related to the overall goods and services actually provided. *See* 2001 Policy Statement, 66 Fed. Reg. at 53,055. Accordingly, the Eleventh Circuit in *Heimmermann v. First Union Mortgage Corporation*, 305 F.3d 1257, 1263-64 (11th Cir. 2002), relying on the 2001 Policy Statement, reversed the district court's class certification, under facts which were virtually identical to those in *Dujanovic*.

In particular, the Eleventh Circuit held that "[c]ontrary to the conclusion in *Culpepper III*, the lender and broker need not be able to tie the YSP payment to the specific services provided." Rather, what is necessary is to determine (i) whether compensable services were provided by the broker and (ii) whether the total amount of broker compensation was reasonable in light of the circumstances of each transaction. *Id.* at 1264. Accordingly, the court vacated the district court decision

27

that had certified a class based on the precise reasoning utilized in *Dujanovic* because the reasonableness inquiry of whether the fee was commensurate with the services would vary in each transaction invoked the need for individual analysis, as it would in this case as well.  *Id.* at 1264.[16]

Case law firmly suggests that the 2001 Policy Statement and *Heimmermann* analysis are applicable here.[17]  In particular, a simple look at Busby's transaction and the fee structure at RealtySouth shows that Busby agreed in writing to pay "brokerage compensation" to RealtySouth consisting of a $149.00 administrative brokerage commission **and** a percentage commission of 3%.  *See* Ex. H.  Busby understood that "brokerage compensation" is what the broker received for its provision of services.  Busby Dep. at 52-53.  Although Busby only paid $149.00 directly for these services,

---

[16] While most courts have applied the *Heimmermann* analysis to cases involving yield spread premiums, this Court believes that the same analysis is applicable in non-yield spread premiums contexts.

[17] For example, in *O'Sullivan v. Countrywide Homes*, 319 F.3d 732 (5th Cir. 2003), plaintiffs alleged that Countrywide had referred various closing business to certain law firms and that the law firms then split (in violation of Sections 8(a) and 8(b) of RESPA) a document preparation fee the lawyers had received with Countrywide.  The district court certified the class action based on its view that Countrywide's receipt of such fees, according to a pre-determined schedule, established a single common question as to whether a RESPA violation occurred and rejected Countrywide's assertion that liability hinged upon RESPA's 8(c)(2) defense.

The Fifth Circuit reversed, utilizing and relying upon the HUD Policy Statements, because "[y]ield spread premiums [were] 'analogous' in some ways to Countrywide's reimbursement fee."  *Id.* at 739.  Accordingly, the Fifth Circuit applied the 2001 Policy Statement, which it specifically noted eschewed the requirement that "a lender and broker tie the disputed fee to specific services."  *See id.* at 740.

RealtySouth received a 2.5% commission payment from the seller, that was negotiated down from 3% in order to get the seller to accept Busby's contract. *See supra* at 10. Thus, RealtySouth's fee structure is equally, if not more, "analogous" to YSPs than the fees at issue in *O'Sullivan* in that, in almost every instance, the broker's total compensation consists of receipt of one payment directly from the consumer and receipt of another payment from another provider.

Moreover, similar to the YSP cases, while no one service could be "linked" to the challenged payment (e.g. the YSP or the ABC Fee), the overall test for whether the payment violates RESPA turns on whether the total compensation received (here by RealtySouth in the form of the ABC Fee from Busby and the 2.5% commission from Re/Max) would be commensurate with the services provided in the transaction. As *Heimmermann* and numerous courts have held, this inquiry is inherently individualized for each putative class member because the amounts paid and services provided vary transaction by transaction. *See also supra* at 16-17 & note 10.[18] The Court finds that the  Heimmermann total compensation and reasonableness analysis

---

[18] The fact that RealtySouth requested closing attorneys to display the ABC Fee on a separate line on the HUD-1 because it, unlike the percentage commission, was not going to be split with agents (Brig. Dep. at 147-48) cannot overcome the total compensation analysis that HUD and the Eleventh Circuit have articulated for two important reasons.  First, to do so would contravene the basic brokerage compensation and brokerage fee contract provision to which RealtySouth and Busby agreed.  Second, if the HUD-1 was completed improperly, it is not the basis for a private cause of action. *See, e.g., Reese v. 1st Metro Mortgage Co.*, No. 03-2185-KHV, 2003 U.S. Dist. LEXIS 19256 (D. Kan. Oct. 28, 2003).

mandates denial of class certification.

**Estoppel Defense**

In its opposition to class certification, RealtySouth also argues that its estoppel defense presents individualized issues that predominate, thereby precluding class certification. RealtySouth contends that some individuals negotiated their percentage commission and RealtySouth agreed to such negotiation based on the consumers' agreement to pay the ABC Fee. RealtySouth contends that such an agreement may give rise to a defense of estoppel. Furthermore, RealtySouth contends that Ms. Busby's acquiescence, as illustrated by her written contract with RealtySouth, may also amount to estoppel. RealtySouth contends that this particular argument is likely to apply to numerous consumers, thereby requiring an individual analysis of the specific transactions.

**Federally Related Loan**

Finally, RealtySouth contends that whether any given class member will have a transaction that involves a federally related mortgage loan will present a predominant individualized question, thereby preventing class certification from being proper. RESPA Section 8(b) requires that the challenged payments be made in connection with a transaction "involving a federally related mortgage loan." RealtySouth contends that Busby has failed to address how this crucial element will

be shown on a class-wide basis.  Busby points out that, by definition, the proposed

class does not include plaintiffs whose real estate transactions with RealtySouth did

not involve federally related mortgage loans.  Contrary to RealtySouth's assertion

otherwise, Plaintiff has assured the Court that she is equipped with plans  for

identifying the class members entitled to notice and compensation.[19]  However, as

asserted by RealtySouth, determining whether a loan is federally related is a

complicated process.  RealtySouth has raised valid issues pertaining to administrative

and legal issues involved in determining whether or not a loan is federally related.

During the hearing, counsel for the Defendant pointed out that it was the Defendant's

---

[19] Busby offers the following plan as one suggestion for identifying potential class members:

> Upon a judgment of liability against RealtySouth on the common
> and predominating issue that it has been charging and accepting an
> unearned ABC fee from consumers in violation of RESPA,
> Plaintiff, pursuant to Rule 23(c)(2) will ask the Court to direct
> notice to all potential claimants explaining the nature of the suit
> and their opportunity to submit a claim for damages as a potential
> member of the class.  Plaintiff will ask that notice be issued to all
> persons identified by the records of RealtySouth as having paid the
> ABC fee within one year prior (the statute of limitations period as
> set forth in 12 U.S.C. section 2614) to the filing of the Busby
> lawsuit and thereafter...As part of the claims process, the potential
> class member will be given the opportunity to submit his or her
> loan and mortgage documentation so that a claims administrator
> can determine if the mortgage at issue is federally related...The
> foregoing is only one of many possible ways of addressing class
> member identity after a judgment in the common and predominant
> issues.

Plaintiff's Reply Brief, pp. 18-19.

right to question the veracity of the process used to determine whether the individual loans are federally related, as well as the ultimate outcome.  The Court is confident that had this case been appropriate for a class action, the Court with the assistance of counsel could fashion an appropriate method to determine whether the individual loans were federally related without creating the need for individual analysis such that predominance would be effected.  However, because it is evident that individual issues predominate, the Court need not address the intricacies related to whether the loans are federally related.

### b.    *Superiority*

Like the predominance requirement, superiority is grounded in the idea that the litigation be carried out as efficiently and as fairly as possible for all parties.  *See Amchem*, 521 U.S. at 615.  The superiority requirement directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Klay*, 382 F.3d at 1269.  As recognized by *Klay*, "the predominance analysis ... has a tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.  *Id.*  However, an important factor in determining whether a class action is superior to other means of resolving this

controversy is the difficulty likely to be encountered in managing the action. *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025(11th Cir. 1996). Here, there are several factors that pose manageability problems.

First and foremost, the Court acknowledges the necessity of individualized analysis pertaining to the reasonableness of the compensation received by RealtySouth, coupled with the existence of numerous individual defenses under the estoppel doctrine. These issues make individual suits or claims, not class suits, the superior way to resolve this dispute. *See, e.g., U-Haul Co. v. Ala. Inc. v. Johnson*, 893 So.2d 307, 312-13 (Ala. 2004) (failure to consider defense with individualized facts warranted reversal of class certification). Because the resolution of each class members' claims will "in actuality require a multitude of minitrials . . . the justification for class certification is absent." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 328 (5th Cir. 1978). Clearly, the necessity for individual analysis compels the denial of class certification.

Next, RealtySouth contends that, as asserted above, there are considerable defects with Busby's class definition.[20] As far as RealtySouth's argument that Busby has disregarded the issue of equitable tolling, it is Busby's contention that the

---

[20] Although raised again by Defendants, the Court will refrain from further discussion regarding the requirement that the loans be federally related, as it has addressed the issue in full under the requirement of Predominance.

applicable limitations period of one year presents no management issue in the present case.  By statute, the claims of the class go back to one year from the date. Busby brought her suit on September 23, 2004 and the class makes up individuals who filed anytime after September 23, 2003.  12 U.S.C. § 2614. The Court finds that in a circumstance such as this, had the case been appropriate for certification, equitable tolling would have been an issue that could have been remedied by adjusting the language of the class definition.

Finally, Busby argues that class certification is superior especially when small claims are involved.  Although this Court recognizes the value of class certification particularly in cases where there is little or no recourse for individuals who have paid an allegedly improper and somewhat minimal fee, such a concern is significantly relieved in light of RESPA's provision (12 U.S.C. § 2607(d)(5)) for awarding plaintiffs their attorneys' fees and costs. [21]  Thus, the Court finds that this argument is not a significant barrier to denying class certification.   Defendants have successfully asserted that individual trials are the superior method to resolve this dispute.

---

[21] *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Golan v. Ohio Sav. Bank,* No. 98-C-7430, 1999 WL 965593, at *7 (N.D. Ill. Oct. 15, 1999); *Schmitz v. Aegis Mortgage Corp.*, No. 97-2142 (DSD/JMM), 1998 U.S. Dist. Lexis 22736, at 18-19 (D. Minn. Aug. 3, 1998).

## IV.    Conclusion

Based on the foregoing, the Court concludes that Busby's Motion for Class

Certification is hereby **DENIED**.

**DONE** this the 20th day of July, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge