FILED

2008 Nov-19  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **VICKI V. BUSBY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:04-CV-2799-VEH** |
| | ) |
| **JRHBW REALTY, INC. d/b/a** | ) |
| **REALTYSOUTH, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Vicki V. Busby ("Busby") brings this case, on behalf of herself and all others similarly situated, against Defendant JRHBW Realty, Inc. d/b/a RealtySouth ("RealtySouth") under § 8(b) of the Real Estate Settlement Procedures Act ("RESPA") for charging individuals a $149 "ABC Fee" (sometimes called an administrative brokerage commission) for which no service was performed.[1]  The

---

[1]  Section 8(b) of RESPA provides:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually

pending motion is:  Busby's Motion to Preclude Certain Testimony by Proffered RealtySouth Expert, Stephen H. Murray ("Murray") (the "Motion to Preclude") (Doc. 111) filed on October 24, 2008.

RealtySouth filed its opposition (Doc. 119) to the Motion to Preclude on November 4, 2008.  Both Busby and RealtySouth filed a copy of Murray's expert report under seal.  (Docs. 113, 121).  Busby filed no reply brief.  As discussed more fully below, the Motion to Preclude is **GRANTED**.

## II.   ANALYSIS

### A.   Challenges to Expert Testimony Generally

The court analyzes Busby's Motion to Preclude under Rule 702 of the Federal Rules of Evidence, which allows expert testimony when (1) the witness is qualified as an expert;[2] and (2) his expertise "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702.  More specifically, Rule 702 states:

------

performed.

12 U.S.C. § 2607(b).

[2]  Here, there is no dispute about Murray's qualifications as an expert witness generally or his ability to testify on the matters within his report specifically.  (*See* Doc. 119 at 9 ("Plaintiff does not dispute that Murray is qualified as an expert in the relevant field or assert that he is not qualified to offer the opinions in his report."); *see generally* Doc. 111).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid 702. Rule 702 must be read in conjunction with three seminal decisions by the Supreme Court of the United States related to expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The *Daubert* decision rejected the previously followed "general acceptance" standard on the admissibility of scientific expert testimony that was established pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), *superseded by rule as stated in Daubert*, 509 U.S. at 587 ("They contend that the *Frye* test was superseded by the adoption of the Federal Rules of Evidence.  We agree.") (footnote omitted).  Instead, the *Daubert* Court addressed admissibility of scientific expert testimony within the framework of Rule 702 and emphasized the role of the district court to perform a gatekeeping function to ensure that <u>any admitted expert testimony is both relevant and reliable</u>.

In defining the district court's gatekeeping role, the Supreme Court stated:

> [T]he trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-93.

In *Joiner*, the United States Supreme Court upheld a district court's decision granting summary judgment for the defendant on the basis that the plaintiff's experts' testimony connecting plaintiff's cancer to his exposure to PCBs and other chemicals did not rise above the level of subjective belief and speculation. In clarifying the sufficiently relevant and reliable standard announced in *Daubert*, the *Joiner* Court pointed out that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146 (citation omitted).

The *Kumho Tire* decision extended the *Daubert* analysis to all types of "technical and other specialized knowledge . . . ." *Kumho Tire*, 526 U.S. at 141. ("We conclude that *Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific'

4

knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." ).  *Kumho Tire* involved the admissibility of the proffered testimony of an engineer, who was an expert in tire failure analysis.  In upholding the district court's decision to exclude the plaintiff's expert's testimony based upon lack of reliability, the Supreme Court noted that the relevant inquiry was whether the expert could reliably determine the cause of the specific tire's separation.  *Kumho Tire*, 526 U.S. at 154.

The Eleventh Circuit has described the district court's mandatory *Daubert* role as:

> [E]ngag[ing] in a rigorous inquiry to determine whether:  "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citation omitted). "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'"  *Id.* at 1291 (citation omitted).

Additionally, all rulings on expert testimony motions are reviewed under an abuse of discretion standard.  *See, e.g., Joiner*, 522 U.S. at 141 ("All evidentiary

decisions are reviewed under an abuse-of-discretion standard."). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 Fed. Appx. 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Finally, <u>the burden under Rule 702 rests squarely with the proponent of the expert witness</u> which, in this case, is RealtySouth:

> The proponent of the expert testimony carries a substantial burden under Rule 702. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999) (citing *Daubert*, 509 U.S. at 592 n.10, 113 S. Ct. 2786). <u>Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact</u>. *See, e.g., Frazier*, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . . ."); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002); *Maiz*, 253 F.3d at 664.

*See Cook ex rel. Estate of Tessier v. Sheriff of Monroe*, 402 F.3d 1092, 1107 (11th Cir. 2005) (emphasis added).

## B.   Application

Murray's anticipated areas of testimony as summarized include: 1) that the use of an ABC Fee is a normal and accepted business practice in the residential lending

industry; 2) that the lack of a direct connection between the use of the ABC Fee and a specific additional service is a normal and accepted business practice in the residential lending industry; and 3) that the increases in costs and decreases in margins have compelled the residential lending industry to adopt new business practices, including the use of an ABC Fee. (*See generally* Docs. 111, 121). Busby's Motion to Preclude seeks to entirely prohibit Murray from testifying as an expert witness for RealtySouth and contends that "Murray's opinions are irrelevant to any material issue and thus not of assistance to the trier of fact." (Doc. 111 at 1). As a direct result of the Eleventh Circuit's class certification opinion (Doc. 92) handed down in this, case as well as other authority, the court agrees with Busby.

Busby's Motion to Preclude the Murray expert testimony hinges upon its position that RealtySouth cannot defend this RESPA action on the basis that "an array of charges tied to a bundle of services provided is perfectly permissible under RESPA." (Doc. 119 at 4). Put differently, RealtySouth counters that it does not automatically become liable under § 8(b) of RESPA just because it has conceded "that no individual specific service (as opposed to a broad bundle of services) is tied to the ABC charge." (*Id.*).

Relatedly, RealtySouth indicates that "Murray will testify that the plain wording of Ms. Busby's Buyer Agent Contract shows that the flat fee was one

component of a two component commission charge, that this type of two prong commission charge is commonplace, and that this type of fee structure permits real estate brokers, and permitted RealtySouth, to maintain existing services and add new services largely associated with technology improvements for the customer." (*Id.* at 5 (citing to Murray Expert Report at 7-9)).

Later in its opposition, RealtySouth frames its defense as follows:  "[I]t is entitled to prove that the fee was a price increase, that the fee enabled new and existing services to be actually provided, and that it is not actionable under RESPA." (*Id.* at 11).  RealtySouth further states that this court has suggested "that if the ABC is a price increase it is *not* actionable under RESPA."  (*Id.*).[3]

Against this backdrop, the court boils down its analysis of Busby's Motion to Preclude into the following determination:  If RealtySouth may defend this § 8(b) RESPA liability case as it has theorized, then it is correct that Murray should be allowed to testify.  However, if RealtySouth's defense strategy is impermissible as

---

[3] RealtySouth apparently bases this "suggestion" upon the court's ruling (Doc. 15) over three years ago on March 2, 2005, granting in part and denying in part its motion to dismiss, but the exact language relied upon to support RealtySouth's gleaning is not clear from its opposition.  In any event, such an interpretation (even if correct) is of little or no value as it is tied to an opinion which pre-dates the critical class certification decision issued as a mandate in this case by the Eleventh Circuit on February 22, 2008, and filed in by the clerk's office on February 25, 2008.  (Doc. 92).  The Eleventh Circuit's class certification ruling is law of the case.

articulated, then Busby is right that such expert testimony would be irrelevant and not otherwise helpful to the jury's determination of RealtySouth's § 8(b) RESPA liability in charging the ABC Fee.

To answer this question, the court is primarily guided by the Eleventh Circuit's unambiguous language contained in its class certification opinion. *See generally Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008). As the Eleventh Circuit explained the procedural history of this case, this court denied RealtySouth's motion for summary judgment on the basis "that there was an issue of material fact regarding whether any services were provided in exchange for the ABC Fee[.]" *Busby*, 513 F.3d at 1319-20.

Then, in addressing the impact of the Department of Housing and Urban Development's ("HUD") Statement of Policy ("SOP") issued in 2001 on the class certification question, the Eleventh Circuit distinguished § 8(a)-based RESPA claims from § 8(b) ones:

> However, the 2001 SOP lays out a different framework for § 8(b) claims. Specifically, as to § 8(b)'s prohibition on unearned fees, the 2001 SOP states:
>
> > Payments that are unearned fees occur in, but are not limited to, cases where: . . . (3) one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, *or* the fee is in excess of the reasonable value of goods or facilities provided or the

9

services actually performed.

> 2001 SOP, 66 Fed. Reg. at 53053 (emphasis added). <u>In other words, the 2001 SOP states that a fee is unearned in violation of § 8(b) when: (1) a fee is charged but "no, nominal, or duplicative work is done" in exchange for the fee</u>; *or* (2) a fee is charged that is unreasonably excessive in light of the services actually performed in exchange for the fee.

*Busby*, 513 F.3d at 1321 (emphasis by underlining added).  Later in the opinion, as

the Eleventh Circuit amplified:

> We conclude that the district court applied the wrong legal standard by analyzing Busby's claim under YSP logic.  As stated above, <u>the 2001 SOP, addressing RESPA § 8(b) prohibition of unearned fees, allows for *two* types of violations: first, where a settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, 2001 SOP, 66 Fed. Reg. at 53057</u>; and second, where the fee charged is in excess of the reasonable value of goods or facilities provided or the services actually performed.  It is this second part of the 2001 SOP which is analogous to YSP analysis, but <u>Busby brings a claim under the first.  Busby does not argue that the ABC Fee is unreasonable; rather, she contends that no services were provided for the ABC Fee</u>. At oral argument, Busby explicitly stated several times that if RealtySouth proves that it provided <u>any service in exchange for the $149 ABC Fee</u>, Busby's claim will fail.  Thus, the district court will not need to make any reasonableness determinations akin to those in an overcharge case. <u>Rather, a simple binary determination of "any services" or "no services" is all that need be done</u>.

*Id.*, 513 F.3d at 1324 (emphasis by underlining added); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 114 (2d Cir. 2007) ("Cohen relies on the first, highlighted circumstance in pursuing her claim that 'one service provider," such as

Chase, cannot charge a consumer a fee for which "no . . . work is done,' what we refer to hereinafter as an 'undivided unearned fee.'") (footnote omitted).

Further, when framing the legal issue of common to the class, the Eleventh Circuit explained:

> Here, as noted by the district court, there is an issue of law common to all of the putative representatives:  <u>whether the ABC Fees violated RESPA § 8(b) because no services were provided, either to sellers or buyers, for whatever ABC Fee was paid</u>. This claim is common to all possible plaintiffs including Busby.  <u>RealtySouth has not enumerated any services that were provided to either sellers or buyers in exchange for the ABC Fee</u>.  Therefore, we find, as did the district court, that Busby's claim is typical of all possible plaintiffs including sellers as well as buyers like Busby.

513 F.3d at 1323 (footnote omitted) (emphasis by underlining added).

Finally, near the end of the class certification opinion, the Eleventh Circuit rejected RealtySouth's suggestion that § 8(c)(2) "provides a defense that applies individually to putative plaintiffs" making Busby's claim ill-suited for class treatment, and summarized that regardless of whether that particular section provided a viable defense "the result is still the same because . . . the issue is whether <u>any services were provided</u> for the ABC Fee."  513 F.3d at 1327 (emphasis added); *see Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003) ("Subsection 8(b) attempts to close any loopholes by prohibiting any person from giving or accepting any part of a fee <u>unless services were actually performed</u>.")

11

(emphasis added); *see also Cohen*, 498 F.3d at 126 ("Because we determine that HUD reasonably construes RESPA § 8(b) to prohibit 'one service provider' from charging the consumer a fee for which 'no . . . work is done,' Policy Statement, 66 Fed.Reg. at 53,057, we defer to that interpretation and conclude that Cohen adequately states a claim under RESPA § 8(b) by alleging that Chase collected an undivided unearned fee. Accordingly, we vacate the Rule 12(b)(6) dismissal of this part of her complaint.").

Thus the class certification opinion from the Eleventh Circuit makes it clear that the scope of RealtySouth's defense is limited to proof that services were, in fact, provided "in exchange for" the ABC Fee.[4]   The anticipated expert testimony from

---

[4] Further, RealtySouth's suggestion that a door remains open for it to show that a non-specific and unconnected "array of services" defense exists with respect to a potential § 8(b) RESPA violation in light of the Eleventh Circuit's opinion on class certification is unpersuasive for at least three reasons. First, the appellate decision does not expressly use that (or even similar) terminology, much less hint that such a defense is viable. Second, the so-called "array of services" defense would seem to eviscerate the potential for any § 8(b) RESPA no services provided in exchange for fee claim (like Busby has asserted here) because a service provider could always defend against liability by tying an extra fee to the overall body of services already provided and charged for as itemized on the settlement statement when that extra fee really had no direct underlying basis for being separately listed as an earned item. Third, RealtySouth maintains that at least a portion of the array of services falling with the purview of the ABC Fee relates to "new" services. However, RealtySouth's position that charging a fee for inchoate services is permissible under § 8(b) is inconsistent with the plain meaning of 2001 HUD SOP which clearly contemplates fees in exchange for "work [that] is done" (*i.e.*, earned fees (emphasis added)), versus fees charged (at least partially) for a collection of unidentified new services that will

Murray amounts to a justification or an explanation of <u>why</u> RealtySouth charged the ABC Fee; the testimony does nothing to make it "more probable or less probable" that any services were provided <u>in exchange for</u> the ABC Fee "than it would be without the evidence." Fed. R. Evid. 401.

Relatedly, RealtySouth, as the proponent of Murray, has failed to meet its substantial burden under 702 of demonstrating "that his testimony will be helpful to the trier of fact." *See Cook*, 402 F.3d at 1107 (citation and internal quotations omitted). Accordingly, the grounds asserted by Busby in her Motion to Preclude Murray from testifying on behalf of RealtySouth are well-taken from a merits standpoint.

Alternatively and regardless of the above merits analysis under § 8(b), the law of the case doctrine (which concept the court discussed with in-depth detail in its memorandum opinion on reconsideration of whether to certify a class),[5] leaves no door open for RealtySouth to follow the defense strategy that Murray's outlined expert testimony would support. As previously explained by this court, "[t]he law of the case doctrine is not limited . . . to issues expressly decided by the appellate court. Rather, the doctrine also bars reconsideration of any issue which was <u>necessarily</u>

---

(or perhaps may not) be provided <u>in the future</u> (*i.e.*, unearned fees).

[5] (*See* Doc. 101 at 9-18).

13

determined by the appellate court during an interlocutory appeal." (Doc. 101 at 11-12 (citing *This That And The Other Gift And Tobacco, Inc. v. Cobb County, Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006)).  At a minimum, the interlocutory decision by the Eleventh Circuit implicitly and necessarily determined that the sole triable § 8(b) RESPA issue in this case is "whether <u>any services were provided</u> for the ABC Fee." *See, e.g., Busby*, 513 F.3d at 1327 (emphasis added).

Relatedly, the mandate similarly narrows RealtySouth's ability to defend itself against Busby's § 8(b) RESPA claim to the type of evidence tending to show that, in fact, it provided (and thereby earned payment for) specific services in exchange for charging the ABC Fee to its customers.  The suggested expert testimony from Murray does nothing to substantiate this sole defense available to RealtySouth by virtue of the application of the law of the case doctrine.  Accordingly, Murray is appropriately precluded as an expert witness because his testimony is irrelevant, not helpful to the jury, and/or would otherwise impermissibly invade the province of the jury, if allowed, given the explicit and/or implicit parameters of RealtySouth's defense against its potential § 8(b) RESPA liability as enunciated by the Eleventh Circuit in this case.

## III.   CONCLUSION

Accordingly, for the reasons explained above, Busby's Motion to Preclude is

**GRANTED**, and Murray is **HEREBY PRECLUDED** from testifying as an expert witness on behalf of RealtySouth pursuant to Rule 702.

**DONE** and **ORDERED** this the 19th day of November, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge