IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VICKI V. BUSBY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  2:04-CV-2799-VEH |
| | ) |
| **JRHBW REALTY, INC. d/b/a** | ) |
| **REALTYSOUTH,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Pending before the court are Plaintiff Vicki V. Busby's ("Busby") Motion to Establish a Claims Administration Process for the Class (Doc. 175) ("Motion to Establish") filed on February 5, 2010, and Defendant JRHBW Realty, Inc. d/b/a RealtySouth's ("RealtySouth") Motion to Strike Report of Eric Forster (Doc. 184) ("Motion to Strike") filed on March 29, 2010.  RealtySouth's Motion to Strike directly relates to Busby's proposal on how to administer class claims as set forth in her Motion to Establish and substantiated by her expert consultant, Eric Forster ("Forster").

Both motions are now under submission.  (*See* Docs. 176, 181, 183, 185-91).

For the reasons explained below, Busby's Motion to Establish is **GRANTED IN PART**, as modified below, and is otherwise **DENIED**. Relatedly, Busby's proposed claim form is generally **APPROVED**. However, RealtySouth is **GRANTED** until June 15, 2010, to file specific, authority-based objections to its contents. Busby's deadline to file any response thereto is June 29, 2010. No reply may be filed.

RealtySouth's Motion to Strike is **DENIED** as **MOOT**. Further, and without waiver of any position, the parties are **ORDERED** to jointly submit a proposed claims administrative process order that incorporates the rulings contained herein, no later than July 6, 2010.

**II.  Rulings**

    **A.  Busby's Motion to Establish**

        **1.  Without a Claim Form as Originally Proposed**

In her Motion to Establish, relying upon the expert testimony of Forster, Busby primarily contends that "a claim form process ought not be required in this case." (Doc. 189 at 3). More specifically, based upon the percentages derived by Forster as part of a random statistical survey,[1] Busby argues that a claim form process is

---

[1] Based upon his statistical study of 377 of the over 25,000 approximate total number of files (Doc. 176-2 ¶ 5)), Forster concluded that 90.35% of the customer files are transactions covered by RESPA and that 99% of the deals were financed by federally-regulated lenders.

unnecessary "[b]ecause of the high probability that almost all of the ABC fee transactions are 'federally related[.]'" (*Id.*). For multiple reasons, which are discussed more fully below, the court concludes that dispensing with a claim form process, even when fully factoring in Forster's expert testimony, is not appropriate under the circumstances of this case, and accordingly rejects that portion of Busby's Motion to Establish.

In her Motion to Establish, Busby relies upon the Fourth Edition of the *Manual for Complex Litigation* (the "*Manual*") as authority in support of her "no claim form" proposal:

> The Federal Judicial Center has studied the class action claims process and agrees: "[t]here may be no need to require action by class members, <u>as where the defendants' records provide a satisfactory, inexpensive and accurate method for determining the distribution</u>." MANUAL FOR COMPLEX LITIGATION FOURTH § 21.66.

(Doc. 176 at 7 (emphasis added)). Here, the records provided by RealtySouth do not provide a "satisfactory" or "accurate method for determining the distribution" due to the complexities involved in ascertaining RESPA-related transactional coverage and class membership. *Id.*; *see also* 2 Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* ("*McLaughlin*") § 6.22 at 106 (6th ed. 2010) ("<u>Permitting recovery without submission of a claim form satisfactorily establishing membership in the class and entitlement to recovery is rarely, if ever appropriate where it is</u>

3

difficult to determine class membership, fact of damage or actual damage amounts or other similar prerequisites of recovery.") (emphasis added).

Also, within this same section, the *Manual* makes it equally clear that "[c]lass members must usually file claims forms providing details about their claims and other information needed to administer the settlement." *Id.* § 21.66 at 331 (emphasis added). Therefore, since guidance from the *Manual* confirms that the use of a claim form is the customary practice in the context of a class settlement, the court sees no basis why this norm would not likewise apply when no class compromise is involved.

Moreover, in this court's view, the Eleventh Circuit's decision in *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1365 (11th Cir. 2002), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 2139 (2008) ("None of petitioners' arguments persuades us to read a first-party reliance requirement into a statute [*i.e.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO")] that by its terms suggests none."), torpedoes a "no claim form" plan if it operates to lessens a plaintiff's burden of proof, such as Busby's proposal does here. In *Sikes*, the Eleventh Circuit upheld the district court's decision to deny class certification in a case asserting claims under RICO, the Communications Act, and various state laws.

In support of its decision that class treatment of the litigation was not

4

appropriate, the *Sikes* court reasoned:

> The district court employed a presumption on the plaintiffs' behalf on the issues of injury and damages, deciding to forgo an individualized inquiry on these elements of the plaintiffs' claims. <u>The court did so despite the fact that applying the presumption would provide recovery to some persons who had not proved that they were injured as a result of LMAD</u>, and, in some instances, would provide recovery in excess of the damages incurred by a class member. The court's rationale was that "such refunds would not significantly harm AT&T":
>
>> Although Local Exchange Carriers (LECs) with whom AT&T contracted to collect the 900-number charges may have kept poor records in refunding money for some calls, also affecting the damages issue, such amounts may be insubstantial compared to the overall harm to the Plaintiffs' class. Besides, to the extent that some percentage of class members might receive a double recovery because the LECs have already given certain refunds for which no records were kept, such refunds would not significantly harm AT&T.
>
> Although we could debate whether AT&T would be "significantly harm[ed]" by paying, in treble damages, money already recovered by a consumer, we need not do so now, <u>for the harm to AT&T is not relevant to the question of whether the plaintiffs' injuries and damages should be presumed</u>.
>
> A plaintiff suing under civil RICO must demonstrate injury as a result of racketeering activity and a specifiable amount of damages. *See Andrews*, 95 F.3d at 1025 (stating that class members must show, "on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages"). <u>To allow recovery by persons who have not been injured or to allow recovery for an injury greater than that caused by the offending conduct would run counter to the plain language of the statute</u>. 18 U.S.C. §

5

> 1964(c) ("Any person *injured* . . . shall recover threefold the damages he sustains . . . .") (emphasis added); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) (stating that a civil RICO defendant is not " 'liable to those who have not been injured' ") (quoting *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984)). <u>We reiterate that class treatment may not serve to lessen the plaintiffs' burden of proof</u>.

*Sikes*, 281 F.3d at 1365 (emphasis by underlining added) (footnotes omitted); *see also McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008) (recognizing in the reversal of a district court certified "fluid recovery" class action that: "The Third Circuit properly observed in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* that '<u>actual injury cannot be presumed</u>, and <u>defendants have the right to raise individual defenses against each class member</u>.' 259 F.3d 154, 191-92 (3d Cir. 2001)[.]") (emphasis added) (other citation omitted).

Therefore, while *Sikes* involves RICO, rather than RESPA, and is not procedurally equivalent to this already certified Rule 23 class litigation, at a minimum *Sikes* provides persuasive guidance to this court that, in the context of addressing a claims process, "class treatment may not serve to lessen the plaintiffs' burden of proof" that would otherwise exist for a litigant in the pursuit of a claim on an individualized basis. Because of the multiple issues discussed below, dispensing with a claims form would result in such an impermissible *Sikes* infirmity and, as a result, the court rejects the "no claim form" part of Busby's Motion to Establish. (*See, e.g.*,

Doc. 176 at 13 (Busby's acknowledging that her proposed "no claim form" procedure will result in payments to uninjured claimants); *id.* ("[t]he small amount of harm caused to RealtySouth by payment to a few class members who may be mistakenly found to be in the class when compared to the number of returned unclaimed payments to class members, because the class member cannot be located.") (emphasis added)).

### a. Who Paid the ABC Fee

Issues surrounding who actually paid the ABC fee demonstrate that Busby's "no claim form" suggestion is problematic. For example, as Forster conceded in his deposition, in at least one instance of his random sampling, the file revealed that the ABC fee was not paid by the buyer or the seller, but by the agent.[2] Moreover, based

---

[2] More specifically, Forster testified that he:

> [B]elieve[d] that there was at least one transaction in which there was an indication that the buyer refused to pay the fee, and yet it showed the $149 as having been -- been collected, and the assumption in that case was the agent volunteered that fee.

Q. Okay. So that's a situation where there could be a question about the source of the payment of the $149; correct?

A. I would say that in that case, this was done outside of closing, so the closing statement would not have shown $149.

(Doc. 188 at 119).

upon the sample of closing files Forster did review, it was not always possible to tell whether the agent paid or someone else did.[3]

---

[3] For example, Forster responded during his deposition when questioned about closing file documentation (*see, e.g.*, Doc. 188 at Ex. 16 at Hughes000001-000003 ("AGENT ADJUSTMENT EDIT"; *see also* Doc. 188 at Ex. 16 at Hughes00005 "COMMISSION EDIT" showing "Administrative Fees" of $149.00 "UNCOLLECTED") that:

> Q. Mr. Forster, just before we took a short break there, we were talking about the fact not all agents fill things out the same way.
>
> Is that your understanding based on your experience in the real estate industry?
>
> A. Yes.
>
> Q. And with respect to Exhibit 16, if you could look at page 2 for a second.
>
> A. That's the Hughes. Okay. Yes.
>
> Q. This printout on page 2 -- it's in some of the files you reviewed, and in many other files it's not included as one of the times you reviewed; correct?
>
> A. Correct.
>
> Q. So this kind of thing -- <u>other detail that we see here isn't present in all of the files; correct</u>?
>
> A. <u>Correct</u>.

(Doc. 188 at 147 (emphasis added)).

If an individual class member (whether a buyer or a seller) did not pay the ABC fee as part of the closing process but, instead, an agent did, then no buyer or seller would have standing to pursue a § 8(b) RESPA claim against RealtySouth due to a lack of injury, and the claimant would not be able to recover damages from RealtySouth. Because the random survey conducted by Forster confirms that agents sometimes paid the ABC fee outside of closing and because RealtySouth's records do not always accurately reflect who paid the ABC fee, dispensing with a claim form is not appropriate in the context of this case, especially given the persuasive application of the *Sikes* directive that the Rule 23 mechanism cannot be a vehicle for "allow[ing] recovery by [uninjured] persons[.]" *Sikes*, 281 F.3d at 1365.

### b. Categories of Cash Sales and ABC Fee Unlisted on HUD-1 Form

Transactions involving all-cash sales and HUD-1 forms not listing the ABC fee also show that Busby's "no claim form" proposal is unworkable. More specifically with respect to RealtySouth's objection over Forster's inclusion of cash sales transactions, Busby agrees that RESPA does not apply if both (1) the seller's house is unencumbered at the time of sale and (2) the buyer pays for it with cash that the buyer has not borrowed, but argues that the eight cash sales included in Forster's

sample involved buyers paying cash "that paid off a federally related loan" owed by the corresponding sellers. (Doc. 189 at 9, 8). Thus, Busby maintains those sample cash transactions are covered under RESPA because they still involve "pay[ing] off the seller's federally related loan[.]" (Doc. 189 at 9).

Busby's position is underdeveloped and untenable. RESPA is unambiguously triggered when a borrower takes out a federally related mortgage <u>loan</u>, unless an exemption applies. *See* 12 U.S.C. § 2602(1)(A) (defining "federally related mortgage loan" to include financing "secured by a first or subordinate lien on residential real property"); 12 U.S.C. § 2606 (a) ("This chapter does not apply to <u>credit</u> transactions involving extensions of <u>credit</u> . . . .") (emphasis added); *see also* 24 C.F.R. § 3500.5 (coverage of RESPA).

Furthermore, a cash sale is generally defined as "a sale in which payment is made immediately in cash <u>rather than put on credit</u>[.]" *See* http://dictionary.bnet.com/definition/cash+sale.html (accessed on Apr. 14, 2010) (emphasis added). Therefore, the court, especially in the absence of any cited authority holding otherwise,[4] sees no basis for the distinction that Busby tries to make

---

[4] *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

concerning the challenged cash transactions and agrees with RealtySouth that closings which happen to extinguish a seller's previously existing federally related mortgage through the payment of <u>all cash</u> by the buyer are not RESPA-covered transactions.

With respect to the twelve transactions in which the ABC fee does not appear on the HUD-1 form <u>but was paid</u>,[5] Busby "responds that Forster's inclusion of [them] was quite sensible." (Doc. 189 at 9). Busby also retorts that "[t]here has never been a holding in this case that no RESPA violation can exist but for the ABC fee appearing in print on the face of the HUD-1." (Doc. 189 at 10 (footnote omitted)). Here, the court concludes, consistent with Forster's above testimony, that the absence of the ABC fee on the face of the HUD-1 form, may likely be an indication that the agent (rather than the seller or the buyer) paid the ABC fee and, as such, those transactions should not be included as RESPA-covered closings.

Relatedly, in the absence of the ABC fee's appearance on the HUD-1 form (and in the absence of any other documented proof of payment), the seller or buyer would lack standing to pursue a § 8(b) RESPA claim against RealtySouth because no evidence of <u>a cognizable injury connected to the claimant</u> would exist in the record.

---

[5] RealtySouth does not contend the ABC fee was not paid with respect to these transactions.

Moreover, to count a seller or buyer as a proper claimant when his or her evidence of standing is lacking runs counter to *Sikes*'s warning that a plaintiff's burden to prove a claim cannot be altered by virtue of Rule 23 status. Therefore, Busby's "no claim form" proposal is not properly supported due to the RESPA-related coverage holes created by the "all-cash" and "no ABC fee listed" closings.

As a fall back position, Busby notes that, even if these 2 categories of transactions are excluded from Forster's calculations, then "the certainty of ABC fee transactions being federally related falls only from about 90% to about 85%." (Doc. 189 at 11). The court is unpersuaded by Busby's alternative argument for at least three reasons. First, "[s]tatements by counsel in briefs are not evidence[,]" *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980),[6] and Busby has not offered any evidence, such as a supplemental affidavit from Forster, to support this "about 85%" figure.

Second, even if "about 85%" is an accurate calculation, such a percentage, even if accepted by the court as reliable, has not been statistically linked to Forster's conclusion that a "<u>high probability [exists] that almost all</u> of the ABC fee transactions are 'federally related[.]" (Doc. 189 at 3 (emphasis added)). In fact, under this

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

alternative scenario, <u>about 15% of the total files produced by RealtySouth would not be RESPA-covered</u> and, without any further screening of such claims, "would [impermissibly] provide recovery to some persons who had not proved that they were injured" under § 8(b) of RESPA. *Sikes*, 281 F.3d at 1365. Third, this alternatively calculated percentage does not address any of the other RESPA-related coverage concerns that the court relies upon in articulating why this class action is ill-suited to proceed administratively without a claim form.

Therefore, Busby's proposal to dispense with a claim form is not appropriately supported given the non-financed and ABC fee unlisted transactions that are not covered by RESPA, but were factored in by Forster in arriving at his over 90% conclusion. Further, Busby's efforts to back out these correctly challenged closings and alternatively suggest <u>through counsel only</u> that "about 85%" of the files produced by RealtySouth are RESPA related, are, particularly in light of the persuasive guidance contained in *Sikes* that a court must refrain from lowering a claimant's burden of proof by way of Rule 23 certification, do not adequately support Busby's "no claim form" proposal.

### c.     The Lane Guide

Forster's reliance upon the Lane Guide Lenders On Line, Inc. (the "Lane Guide") as a basis for determining whether some lenders' activities qualify for

13

RESPA coverage under 12 U.S.C. § 2602 illustrates further how the records produced by RealtySouth, by themselves, do not provide a "satisfactory" or "accurate method for determining the distribution." In particular, Forster used the Lane Guide as one of his methods for ascertaining whether a particular institution is federally regulated, which is part of the RESPA-covered inquiry and which information cannot always be confirmed by simply studying a customer file.[7]

Forster relied upon the Lane Guide with respect to "only to a small sub-set of lenders involved in the ABC fee transactions." (Doc. 189 at 5). If an entity was listed within the Lane Guide, then Forster concluded that it did $1,000,000 in annual lending, an applicable federally regulated threshold under RESPA. However, through the undisputed declaration of Richard Lane, the President of Lane Guide, RealtySouth has established that the Lane Guide does not employ the benchmark of $1,000,000 in annual lending as a criterion for including an institution in the listing. (Doc. 185-1 ¶¶ 1, 4).

Therefore, because the records from RealtySouth do not always independently

---

[7] "The other modes of proof, before getting to the $1,000,000 threshold, are: funds insured by government; lender regulated by a federal agency; and lender intends to sell mortgage to Fannie Mae, etc." (Doc. 189 at 5 (citation omitted)). Sometimes, a customer file does reveal a financial entity's federally regulated status. "[F]or example, if a lender's name has the word 'bank' in it, then the lender's deposits are FDIC-insured, thus meeting one of the lender characteristic requirements." (Doc. 183 at 14 (citation omitted)).

14

reveal whether the institution involved is federally regulated and because inclusion within the Lane Guide does not establish that the sub-prime lenders meet the 1,000,000 financing threshold, Busby's request that the court dispense with a claim form is not adequately supported and would run afoul of *Sikes*.

### d. The Dataquick Database

Likewise, Forster's reliance upon the Dataquick database of U.S. properties to determine whether the property's use meets the requirements of RESPA additionally demonstrates how the records produced by RealtySouth, by themselves, do not provide a "satisfactory" or "accurate method for determining the distribution." More specifically, because RealtySouth's files do not reveal the purpose for which a particular piece of property is being used (*i.e.*, residential or commercial), Forster relied upon "the 'Dataquick database of U.S. properties' to determine whether the property's use me[ets] the requirements of RESPA." (Doc. 184 at 8). Based upon the information contained in the Dataquick database, if a house was "in a subdivision zoned residential" Forster assumed that it "is probably, in fact, being used as a residence" and included it as a RESPA-covered transaction. (Doc. 189 at 7).

Therefore, Forster's testimony confirms that the records from RealtySouth do not independently substantiate whether the use of the property satisfies RESPA's requirements. Moreover, the Dataquick database merely suggests a use, based upon

zoning, rather than confirms the actual use. As a result, Busby's request that the court dispense with a claim form is not adequately supported and would violate *Sikes*'s prohibition against using Rule 23 as a way to lessen a plaintiff's burden of proof.

### 2. Without a Claim Form As Alternatively Proposed

In light of RealtySouth's opposition to Busby's Motion to Establish, Busby suggests a compromise position for dispensing with a claim form in her reply: retain 2 claims administrators to review "each of the 30,000 files in about one month's time." (Doc. 190 at 7). While Busby indicates that such a process would be more laborious and time-consuming than her original proposal, she maintains <u>through counsel</u> that the resulting set of eligible class members would be more certain, *i.e.*, roughly 99%, than the set that would result without conducting any individualized assessment, *i.e.*, over 90% (as calculated by Forster), or about 85% (as alternatively suggested by Busby's counsel).

The court rejects this underdeveloped alternative position proposed by Busby. Not only is the roughly 99% certainty figure unsupported by <u>any</u> evidence, but also (and consistent with the reasoning set forth above), because RealtySouth's records do not provide a satisfactory or accurate way for determining a claimant's entitlement to § 8(b) RESPA damages because of the multi-faceted RESPA-related coverage inquiry, dispensing with a claim form is not appropriate here, regardless of

incorporating an individualized review component. For example, an individualized study of each transaction still would not address the uncertainty surrounding certain closings in which no ABC fee is listed and/or a subprime lender is involved (and whether that particular entity is federally regulated). Additionally, an individualized file assessment will not confirm that the actual use of the property is residential, and thus, RESPA-covered. These issues, which can only be answered by going beyond the contents of RealtySouth's customer files and, even then, cannot be determined unambiguously, mean that the litigation is ill-suited for proceeding without a claim form, particularly given the Eleventh Circuit's "reiterate[d]" admonition in *Sikes* that Rule 23 treatment cannot serve to reduce a plaintiff's burden of proof. *Sikes*, 281 F.3d at 1365.

### 3. With a Claim Form

In the event that the court rejects Busby's "no claim form" proposal, she has alternatively proposed a claim form for the court to consider. (Doc. 176 at 23; *id.* at Ex. 5). Without directly addressing the contents of Busby's suggested claim form, RealtySouth has proposed its own version of a claim form and process. (Doc. 183 at 21-22; Doc. 186 at Ex. D).

Consistent with the foregoing rulings relating to Busby's "no claim form" proposals, the court determines that this class action requires the use of a claim form

as part of the administrative process. Further, because the claim form proposed by Busby is easier for class members to follow, the court generally **ADOPTS** it. However, RealtySouth is **GRANTED** until June 15, 2010, to file specific, authority-based objections to its contents. Busby's deadline to file any response thereto is June 29, 2010. No reply may be filed. By separate order, the court will then address any modifications to the proposed claim form that it deems necessary.

As for other components to the claim process, if a claim is initially rejected, individuals should "be permitted to offer additional proof of their membership in the class and that their transaction satisfies RESPA's 'federally related' mortgage requirement" and Realty South should "have an opportunity to challenge the individual submissions and evidence and put forth any evidence of its own." (Doc. 183 at 21-22).

In filing her reply, Busby withdraws her references to the use of special masters contained in her original proposal. (Doc. 190 at 7). Instead, the court and, <u>if necessary</u>, a jury, will make findings regarding any contested class members or other disputed <u>material</u> issues.

Busby additionally clarifies in her reply that she "agrees not to include within this *Busby* class any claims for the $100 or $250 'flat fee' paid in accordance with RealtySouth's post March 1, 2009, contracts and closing processes." (Doc. 190 at 9).

Therefore, Busby's Motion to Establish, as modified herein, is **GRANTED IN PART**, and otherwise is **DENIED**. Further (and without waiver of any position), the parties are **ORDERED** to jointly submit a proposed claims administrative review order which incorporates the above rulings and includes suggested time frames for the various parts of the process.

### B.    RealtySouth's Motion to Strike

Busby relies upon the expert testimony of Forster to support her proposal that the court dispense with using a claim form in this case. Because this court has determined that administering claims in this lawsuit without a claim form is not appropriate even when completely considering Forster's expert testimony, RealtySouth's Motion to Strike is **DENIED** as **MOOT**.

### III.   Conclusion

Accordingly, Busby's Motion to Establish is **GRANTED IN PART**, as modified herein, and otherwise is **DENIED**. RealtySouth's Motion to Strike is **DENIED** as **MOOT**.

The claim form proposed by Busby is generally **APPROVED**. However, RealtySouth is **GRANTED** until June 15, 2010, to file specific, authority-based objections to its contents. Busby's deadline to file any response thereto is June 29, 2010. No reply may be filed. Finally, the parties are **ORDERED** to jointly submit

a proposed claims administrative process order that reflects the above rulings to hopkins_chambers@alnd.uscourts.gov no later than July 6, 2010.

**DONE** and **ORDERED** this the 3rd day of June, 2010.

                                                /s/ Hopkins
**VIRGINIA EMERSON HOPKINS**
United States District Judge