## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **VICKI V. BUSBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:04-CV-2799-VEH** |
| | ) | |
| **JRHBW REALTY, INC., d/b/a** | ) | |
| **REALTYSOUTH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Pending before the court is Plaintiff Vicki V. Busby's ("Busby") Motion to Require RealtySouth to Bear the Costs of Noticing Claims Administration (Doc. 198) (the "Motion") filed on July 23, 2010.  The parties also filed their opposing briefs on July 23, 2010.  (Docs. 199, 200).

In the Motion, Busby seeks to have Defendant JRHBW Realty South, Inc. d/b/a RealtySouth ("RealtySouth") "bear the costs of additional class notice and claims administration." (Doc. 198 at 1).  Busby primarily premises its Motion upon Rule 23 of the Federal Rules of Civil Procedure as well as statutorily pursuant to RESPA.

RealtySouth objects to the Motion maintaining that "the Court should follow

the ordinary rule that costs for class notice or administration in a class action should

only be done at the conclusion of the case as part of the ordinary shifting of costs."

(Doc. 200 at 6).   Alternatively, RealtySouth suggests that "if the Court shifts costs

over RealtySouth's objections, then Plaintiff should be required to post a bond to

cover these costs."  (*Id.* at 14).   For all the reasons explained below, the Motion is

**DENIED**.

II.    **Analysis**

       A.     **Rule 23**

       The court has studied the authorities cited by the parties, including in particular

the controlling Supreme Court decisions in *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340 (1978), *Eisen v. Carlisle and Jacquelin* ("*Eisen IV*"), 417 U.S. 156 (1974),

and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970)[1] as well as the former Fifth

---

[1] As *Mills* involves cost reimbursement in the context of shareholder derivative and minority stockholder class claims under the Securities Exchange Act of 1934, its usefulness in the context of Busby's Motion is dubious at best.  *Mills*, 396 U.S. at 377, 378  ("Petitioners asserted the right to complain of this alleged violation both derivatively on behalf of Auto-Lite and as representatives of the class of all its minority shareholders.") (emphasis added); *id.* at 389-90 ("We agree with the position taken by petitioners, and by the United States as amicus, that petitioners, who have established a violation of the securities laws by their corporation and its officials, should be reimbursed by the corporation or its survivor for the costs of establishing the violation.") (emphasis added) (footnote omitted); *see also Eisen*, 417 U.S. at 178 ("The usual rule is that a plaintiff must initially bear the cost of notice to the class. The exceptions cited by the District Court related to situations where a fiduciary duty pre-existed between the plaintiff and defendant, as in a shareholder derivative suit.")

Circuit's opinion in *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977).[2]  While none of these cases directly addresses the issue of shifting interim class administrative costs to a defendant under Rule 23 when a motion for partial summary judgment as to liability has been granted in favor of the certified class action representative,[3] certain language from these opinions does provide this court with binding (or alternatively at least instructively persuasive) guidance on how to properly approach the issue.[4]

---

(emphasis added) (footnote omitted).

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[3]  (*See* Doc. 160 at 2 ("Accordingly, judgment as to liability under § 8(b) of RESPA is **HEREBY ENTERED** in favor of Busby and the class that she represents and against RealtySouth.")).  Indeed, as Busby observes:

> The issue at hand is fairly rare and the law on the issue [is] scarce. Such is the case, because it is the rare class action where the class has been certified, the class has won a judgment of liability on the merits and yet the Defendant refuses to settle the case.

(Doc. 199 at 3 (emphasis added)).

[4]  For example, while *Oppenheimer,* discussed in great detail *infra*, does not procedurally involve a certified class in which liability in favor of the class representative has been determined and specifically addresses a cost issue relating to dissemination of the initial notice to potential class members as opposed to the subsequent costs associated with sending out a claim form, the Supreme Court confirms the more general and fundamental class action rule that the representative plaintiff should be prepared to finance his or her class action lawsuit from the infancy

3

*Eisen IV* stands for "[t]he usual rule [in Rule 23 actions] that a plaintiff must initially bear the cost of notice to the class." *Eisen IV*, 417 U.S. at 178; *id.* at 178-79 ("Where, as here, the relationship between the parties is truly adversary, <u>the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit</u>.") (emphasis added). *In re Nissan*, relying upon *Eisen IV*, similarly stated that "[u]pon commencing a class action, the class representatives must be prepared to accept the concomitant responsibility of identifying absentee class members as well as paying the costs of their individual notice" and found "[n]o peculiar circumstances exist[ing] which would warrant a departure from this general rule." 552 F.2d at 1102 (citations omitted); *In re Nissan*, 552 F.2d at 1103 ("Accordingly, we hold that plaintiffs are required at their own expense to compile a list of the absentee class members' names and addresses from defendants' RDR cards.").

*Oppenheimer*, after expanding upon potential exceptions to the general rule that a plaintiff should bear the costs associated with maintaining a class under Rule

---

of the case's life to its end. *See, e.g., Oppenheimer*, 437 U.S. at 356 ("In *Eisen IV* <u>we noted the general principle that a party must bear the 'burden of financing his own suit</u>,' 417 U.S., at 179, 94 S. Ct., at 2153.") (emphasis added). Against this backdrop, and in the absence of any more directly on point controlling authority from either the Eleventh Circuit or the Supreme Court, this court is persuaded to follow *Opperheirmer*'s framework for determining whether it is appropriate to shift to RealtySouth, at this particular juncture, the costs of sending the claim form and any remaining  expenses associated with the claims administrative process.

4

23, ultimately holds that the district court abused its discretion in allocating costs to the defendant there because the case did not fall into a category outside of the ordinary Rule 23 path.  As the *Opperheimer* Court explained:

> The general rule must be that the representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class action and to represent other members of his class.  In *Eisen IV* we noted the general principle that a party must bear the "burden of financing his own suit," 417 U.S., at 179, 94 S.Ct., at 2153.  Thus ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant.
>
> In some instances, however, the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff.  In such cases, we think that the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question.  As the *Nissan* court recognized, in identifying the instances in which such an order may be appropriate, a rough analogy might usefully be drawn to practice under Rule 33(c) of the discovery rules.  Under that Rule, when one party directs an interrogatory to another party which can be answered by examination of the responding party's business records, "it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to" examine and copy the records, if the burden of deriving the answer would be "substantially the same" for either party.  Not unlike *Eisen IV*, this provision is intended to place the "burden of discovery upon its potential benefitee."  The holding of *Nissan* represents application of a similar principle, for when the court concluded that the representative plaintiffs could derive the names and addresses of the class members from the defendants' records with substantially the same effort as the defendants, it required the representative plaintiffs to perform this task and hence to bear the cost. *See supra*, at 2388.  But where the burden of deriving the answer would not be "substantially the same," and the task could be performed more

efficiently by the responding party, the discovery rules normally require the responding party to derive the answer itself.

In those cases where a district court properly decides under Rule 23(d) that a defendant rather than the representative plaintiff should perform a task necessary to send the class notice, the question that then will arise is which party should bear the expense. On one hand, it may be argued that this should be borne by the defendant because a party ordinarily must bear the expense of complying with orders properly issued by the district court; but *Eisen IV* strongly suggests that the representative plaintiff should bear this expense because it is he who seeks to maintain the suit as a class action. In this situation, the district court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff. Once again, a rough analogy might usefully be drawn to practice under the discovery rules. Under those rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from "undue burden or expense" in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery. The analogy necessarily is imperfect, however, because in the Rule 23(d) context, the defendant's own case rarely will be advanced by his having performed the tasks. *Cf.* n.30, *infra*. Thus, one of the reasons for declining to shift costs under Rule 26(c) usually will be absent in the Rule 23(d) context. For this reason, a district court exercising its discretion under Rule 23(d) should be considerably more ready to place the cost of the defendant's performing an ordered task on the representative plaintiff, who derives the benefit, than under Rule 26(c). In the usual case, the test should be whether the expense is substantial, rather than, as under Rule 26(c), whether it is "undue."

Nevertheless, in some instances, the expense involved may be so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff. In *Nissan*, for example, the court did not find it necessary to direct the representative plaintiffs to reimburse the defendants for the expense of producing their files for inspection.

6

In other cases, it may be appropriate to leave the cost where it falls because the task ordered is one that the defendant must perform in any event in the ordinary course of its business. <u>Although we do not attempt to catalogue the instances in which a district court might be justified in placing the expense on the defendant, we caution that courts must not stray too far from the principle underlying *Eisen IV* that the representative plaintiff should bear all costs relating to the sending of notice</u> because it is he who seeks to maintain the suit as a class action.

<u>In this case, we think the District Court abused its discretion in requiring petitioners to bear the expense of identifying class members.</u> The records containing the needed information are kept by the transfer agent, not petitioners. Since petitioners apparently have the right to control these records and since the class members can be identified only by reference to them, the District Court acted within its authority under Rule 23(d) in ordering petitioners to direct the transfer agent to make the records available to respondents. The preparation of the desired list requires, as indicated above, the manual sorting out of names and addresses from old records maintained on paper, the keypunching of up to 300,000 computer cards, and the creation of new computer programs for use with extant tapes and tapes that would have to be created from the paper records. It appears that neither petitioners nor respondents can perform these tasks, for both sides assume that the list can be generated only by hiring the services of a third party, the transfer agent, for a sum exceeding $16,000. <u>As the expense of hiring the transfer agent would be no greater for respondents, who seek the information, than for petitioners, respondents should bear the expense.</u>

*Opperheimer*, 437 U.S. at 356-360 (emphasis added) (footnotes omitted).

Therefore, *Opperheimer* presents several steps for this court to consider before costs associated with class claims administration may be properly shifted to a defendant under Rule 23. First the court must determine whether "[RealtySouth] may be able to perform a necessary task with less difficulty or expense than could

[Busby]." 437 U.S. at 356. In this instance, Busby has not argued, much less provided any proof, that RealtySouth is in a better position to perform the various tasks which remain to administer the class claims. Under such circumstances, the Motion is deficient from a Rule 23 threshold standpoint as outlined in *Oppenheimer*.

Second, even if Busby had shown that RealtySouth's ability to perform the remaining class administrative undertakings is superior to hers (which she has not), she has neither argued nor demonstrated that the expense associated with handling these tasks "would be [far] greater for [her], . . . than for [RealtySouth], [such that Busby] should [not] bear the expense." 437 U.S. at 360. Indeed, in their briefs, neither side has provided the court with an estimated cost figure for sending out the additional class notice and handling the related claims administration.

Instead, Busby asserts that RealtySouth should bear the costs of claims administration process because it has a superior ability to pay over Busby, regardless of the amount. (Doc. 199 at 9-10). In *Opperheimer*, the Supreme Court addressed the district court's attempt to link its cost-shifting decision to the superior financial resources of the defendants:

> The second reason advanced by the District Court was that $16,000 is a "relatively modest" sum, presumably in comparison to the Fund's total assets, which exceed $500 million. <u>Although in some circumstances the ability of a party to bear a burden may be a consideration, the test in this respect normally should be whether the</u>

<u>cost is substantial; not whether it is "modest" in relation to ability to</u> <u>pay</u>.  In the context of a lawsuit in which the defendants deny all liability, the imposition on them of a threshold expense of $16,000 to enable the plaintiffs to identify their own class hardly can be viewed as an insubstantial burden. *Cf. Eisen IV*, *supra*, at 176, 94 S.Ct., at 2151. As the expenditure would benefit only respondents, we think that the amount of money involved here would cut strongly against the District Court's holding, even if the principle of *Nissan* did not control.

*Opperheimer*, 437 U.S. at 361-62 (emphasis added).  Here, without any information about what the future estimated costs of class administration will be, the court can hardly conclude that such an amount is "insubstantial."  Accordingly, as there is no record of any valid financial reason for making RealtySouth the party responsible for paying interim class costs, under *Opperheimer*'s framework, it would be an abuse of discretion for this court to deviate from the normal rule.

*Opperheimer* suggests an additional reason why the court should not require RealtySouth to bear future class administrative costs.  In her brief, Busby maintains that shifting costs to RealtySouth is appropriate because it "insisted on a claim form and claim process that will require collection and review of forms and documentation from all class members[.]"  (Doc. 199 at 2-3).  In *Opperheimer*, the Supreme Court expressly rejected the district court's attempt to link its cost-shifting decision to the defendants' successful litigation efforts:

<u>First, the court thought that petitioners should bear this cost because it</u> <u>was their opposition to respondents' proposed redefinition of the class</u>

9

and method of sending notice that made it necessary to incur the cost. A district court necessarily has some discretion in deciding the composition of a proper class and how notice should be sent. Nor is it improper for the court to consider the potential impact that rulings on these issues may have on the expense that the representative plaintiff must bear in order to send the notice. *See Eisen IV*, 417 U.S., at 179 n.16, 94 S. Ct., at 2153 n.16; *id.*, at 179-181, 94 S. Ct., at 2153-2154 (Douglas, J., dissenting in part). But it is neither fair nor good policy to penalize a defendant for prevailing on an argument against a representative plaintiff's proposals. If a defendant's argument has merit, it should be accepted regardless of his willingness to bear the extra expense that its acceptance would require. Otherwise, a defendant may be discouraged from advancing arguments entirely appropriate to the protection of his rights or the rights of absent class members.

The potential for inequity appears to have been realized in this case. The District Court seems to have agreed with petitioners that respondents' proposed redefinition of the class was improper. Otherwise its actions would be difficult to fathom, for its rejection of the proposed redefinition increased the cost to respondents as well as petitioners. By the same token, if the District Court believed that sending the notice to current Fund shareholders who were not class members might harm the Fund, it should not have required the Fund to buy protection from this threat. Yet it must have believed that the Fund would be harmed, for otherwise there was no reason to reject respondents' proposal and thus increase the cost that respondents themselves would have to bear. For these reasons, we hold that the District Court erred in linking the questions of class definition and method of notice to the cost-allocation question.

*Opperheimer*, 437 U.S. 360-61 (emphasis added) (footnotes omitted). Similarly, it would be error for this court to order RealtySouth to pay for administrative costs simply because it prevailed over Busby on the "no claim form" issue.

Therefore, the court concludes that it would be an abuse of discretion for it to

order RealtySouth to be financially responsible for the remaining costs of class administration pursuant to Rule 23 under the circumstances of this litigation. Alternatively, to the extent the court has the discretion under Rule 23 to order a mid-litigation shift in the payment of expenses from Busby to RealtySouth, it chooses not to exercise that authority on the basis of this record.

## B.    RESPA

Busby also supports the Motion by relying upon 12 U.S.C. § 2607(d)(5) of RESPA,[5] which states:

> In any private action brought pursuant to this subsection, <u>the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees</u>.

*Id.* (emphasis added).  As Busby maintains "[b]y achieving summary judgment for the class on the issue of liability under RESPA, Busby has prevailed on a very significant issue entitling her to prevailing party status."  (Doc. 199 at 7 (citation omitted)).

The court is unpersuaded by Busby's prevailing party position for several different reasons.  One, Busby offers no legal authority in which a court has used § 2607(d)(5) as a vehicle for circumventing the standard protocol for handling expenses

---

[5]   Busby also secondarily cites to Fed. R. Civ. P. 54(d), which sets forth a comparable prevailing party standard for the award of costs.  (Doc. 199 at 6); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

of class administration under Rule 23 as explained above. *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Two, § 2607(d)(5) expressly uses the term "court costs" and Busby has made no effort to explain to the court what Congress intended for this language to encompass.  In this court's view, such restrictive wording does not readily mean costs associated with class action administration, but rather <u>taxable</u> costs such as those set forth in 28 U.S.C. § 1920.[6]  Indeed, Rule 23(h) specially addresses the procedures to

---

[6]  28 U.S.C.A. § 1920 provides:

<u>A judge or clerk of any court of the United States may tax as costs the following</u>:


(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily

follow for awarding attorney's fees and <u>nontaxable</u> costs associated with certified

class action litigation.  Fed. R. Civ. P. 23(h).

Three, to the extent that § 2607(d)(5) provides this court with the permissive

authority to shift interim class administrative costs to RealtySouth as a prevailing

party at this non-final juncture, the court, in its discretion, is not inclined to act in

such a manner.

Therefore, the court concludes that it would be an abuse of discretion for it to

order RealtySouth to be financially responsible for the remaining costs of class

administration pursuant § 2607(d)(5) of  RESPA.  Alternatively, to the extent the

court has the power under § 2607(d)(5) to issue such an interlocutory order, it elects

not to exercise its discretion in that fashion.

      **C.**    *Newberg on Class Actions***, Other Non-Binding Authorities,**

---

        obtained for use in the case;

        (5)    Docket fees under section 1923 of this title;

        (6)    Compensation  of  court  appointed  experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

    A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C.A. § 1920 (emphasis added).

**and Inherent Powers**

Finally, to the extent that excerpts from *Newberg on Class Actions*, other non-binding authorities, and the doctrine of inherent powers arguably support shifting costs to RealtySouth, this court rejects them as inapplicable and/or unpersuasive, especially in light of the above analysis of Rule 23 precedent that is binding upon this court, and the absence of any controlling authority which significantly bolsters the merits of Busby's Motion.   In particular, none of Busby's alternatively offered authorities convince this court that ordering RealtySouth to pay future claim expenses is an errorless, or alternatively, an appropriate exercise of its discretion in the context of this hotly contested class litigation.

## III.   Conclusion

Accordingly, consistent with the above analysis, the Motion is **DENIED**.

**DONE** and **ORDERED** this the 19th day of August, 2010.


**VIRGINIA EMERSON HOPKINS**
United States District Judge

14